**<u>Exhibit E</u>**

# SUPERIOR COURT

(Commercial Division)

(Sitting as a court designated pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36)

CANADA
PROVINCE OF QUEBEC
DISTRICT OF MONTREAL

No.:    500-11-063787-242

DATE:  March 18, 2024

———————————————————————————————————————

**BY  THE HONOURABLE   MARTIN F. SHEEHAN, J.S.C.**

———————————————————————————————————————

**IN THE MATTER OF THE PLAN OF COMPROMISE OR ARRANGEMENT OF:**

**GOLI NUTRITION INC.**
and
**GOLI NUTRITION INC.**
     Applicants/Debtors

and
**DELOITTE RESTRUCTURING INC.**
     Monitor

———————————————————————————————————————

## FIRST INITIAL ORDER

———————————————————————————————————————

**ON READING** the Applicants' *Application for the Issuance of a First Day Initial Order, an Amended and Restated Initial Order and Other Relief, Including the Approval of a Transaction* pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, C-36 (as amended the "**CCAA**") and the exhibits, the affidavit filed in support thereof (the "**Application**"), the consent of Deloitte Restructuring Inc., a licensed insolvency trustee, to act as monitor (the "**Monitor**"), relying upon the submissions of counsel and being advised that the interested parties, including secured creditors who are likely to be affected by the charges created herein were given prior notice of the presentation of the Application;

JS1699

**GIVEN** the provisions of the CCAA;

**WHEREFORE, THE COURT**:

1. **GRANTS** the Application.

2. **ISSUES** an order pursuant to the CCAA (the "**Order**"), divided under the following headings:

    - Service

    - Application of the CCAA and Administrative Consolidation

    - Effective Time

    - Plan of Arrangement

    - Stay of Proceedings against the Applicants and the Property

    - Stay of Proceedings against the Directors and Officers

    - Possession of Property and Operations

    - No Exercise of Rights or Remedies;

    - No Interference with Rights

    - Continuation of Services

    - Non-Derogation of Rights

    - Syndicated Lenders Unaffected

    - Directors' and Officers' Indemnification and Charge

    - Restructuring

    - Powers of the Monitor

    - Priorities and General Provisions Relating to CCAA Charges

    - Comeback Hearing

    - General

**Service**

3.  **ORDERS** that any prior delay for the presentation of the Application is hereby abridged and validated so that the Application is properly returnable today and hereby dispenses with further service thereof.

4.  **DECLARES** that sufficient prior notice of the presentation of this Application has been given by Goli Nutrition Inc. ("**Goli**"), a corporation existing under the laws of Canada, and Goli Nutrition Inc., a corporation existing under the laws of Delaware ("**Goli US**" and, with Goli, the "**Applicants**"), to interested parties, including the secured creditors who are likely to be affected by the charges created herein.

**Application of the CCAA and Administrative Consolidation**

5.  **DECLARES** that each of the Applicants is a debtor company to which the CCAA applies.

6.  **ORDERS** the consolidation of these CCAA proceedings of the Applicants (the "**CCAA Proceedings**") under one single Court file and that all proceedings, filings, and other matters in the CCAA Proceedings be filed jointly and together in Court file number 500-11-063787-242.

7.  **DECLARES** that the consolidation of the CCAA Proceedings in respect of the Applicants shall be for administrative purposes only and shall not effect a consolidation of the assets and property or of the debts and obligations of each Applicant, including, without limitation, for the purposes of any Plan or Plans that may be hereafter proposed.

**Effective time**

8.  **DECLARES** that this Order and all of its provisions are effective as of 12:01 a.m. Montreal time, province of Quebec, on the date of this Order (the "**Effective Time**").

**Plan of Arrangement**

9.  **DECLARES** that the Applicants, in consultation with the Monitor, shall have the authority to file with this Court and to submit to their creditors one or more Plans in accordance with the CCAA.

**Stay of Proceedings against the Applicants and the Property**

10. **ORDERS** that until and including March 27, 2024 (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**") shall be commenced or continued against or in respect of the Applicants, or affecting the Applicants' business operations and activities (the "**Business**") or the Property (as defined herein below), including as provided in paragraph 14

        hereinbelow except with leave of this Court. Any and all Proceedings currently under way against or in respect of the Applicants or affecting the Business or the Property are hereby stayed and suspended pending further order of this Court, the whole subject to subsection 11.1 CCAA.

11. **ORDERS** that the rights of His Majesty in right of Canada and His Majesty in right of a Province are suspended in accordance with the terms and conditions of Subsection 11.09 CCAA.

**Stay of Proceedings against the Directors and Officers**

12. **ORDERS** that during the Stay Period and except as permitted under subsection 11.03(2) of the CCAA, no Proceeding may be commenced, or continued against any former, present or future director or officer of the Applicants nor against any person deemed to be a director or an officer of the Applicants under subsection 11.03(3) CCAA (each, a "**Director**", and collectively the "**Directors**") in respect of any claim against such Director which arose prior to the Effective Time and which relates to any obligation of the Applicants where it is alleged that any of the Directors is under any law liable in such capacity for the payment of such obligation.

**Possession of Property and Operations**

13. **ORDERS** that each of the Applicants shall remain in possession and control of its present and future assets, rights, undertakings and properties of every nature and kind whatsoever, and wherever situated, including all proceeds thereof (collectively the "**Property**"), the whole in accordance with the terms and conditions of this order.

**No Exercise of Rights or Remedies**

14. **ORDERS** that during the Stay Period, and subject to, *inter alia*, subsection 11.1 CCAA, all rights and remedies of any individual, natural person, firm, corporation, partnership, limited liability company, trust, joint venture, association, organization, governmental body or agency, or any other entity (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Applicants, or affecting the Business, the Property or any part thereof, are hereby stayed and suspended except with leave of this Court.

15. **DECLARES** that, to the extent any rights, obligations, or prescription, time or limitation periods, including, without limitation, to file grievances, relating to the Applicants or any of the Property or the Business may expire (other than pursuant to the terms of any contracts, agreements or arrangements of any nature whatsoever), the term of such rights, obligations, or prescription, time or limitation periods shall hereby be deemed to be extended by a period equal to the Stay Period. Without limitation to the foregoing, in the event that the Applicants become bankrupt or a receiver as defined in subsection 243(2) of the *Bankruptcy and Insolvency Act (Canada)* (the "**BIA**") is appointed in respect of the Applicants, the

period between the date of the Order and the day on which the Stay Period ends shall not be calculated in respect of the Applicants in determining the 30 day period referred to in Section 81.1 of the BIA or the 15 day period referred to in Section 81.2 of the BIA.

**No Interference with Rights**

16. **ORDERS** that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, resiliate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Applicants, except with the written consent of the Applicants and the Monitor, or with leave of this Court.

**Continuation of Services**

17. **ORDERS** that during the Stay Period and subject to paragraph 19 hereof and subsection 11.01 CCAA, all Persons having verbal or written agreements with the Applicants or statutory or regulatory mandates for the supply of goods or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation, utility, or other goods or services made available to the Applicants, are hereby restrained until further order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Applicants, and that the Applicants shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses, domain names or other services, provided in each case that the normal prices or charges for all such goods or services received after the date of the Order are paid by the Applicants, without having to provide any security deposit or any other security, in accordance with normal payment practices of the Applicants or such other practices as may be agreed upon by the supplier or service provider and the Applicants, with the consent of the Monitor, or as may be ordered by this Court.

18. **ORDERS** that, notwithstanding anything else contained herein and subject to subsection 11.01 CCAA, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided to the Applicants on or after the date of this Order, nor shall any Person be under any obligation on or after the date of the Order to make further advance of money or otherwise extend any credit to the Applicants.

19. **ORDERS** that, without limiting the generality of the foregoing and subject to Section 21 of the CCAA, if applicable, cash or cash equivalents placed on deposit by the Applicants with any Person during the Stay Period, whether in an operating account or otherwise for themselves or for another entity, shall not be applied by such Person in reduction or repayment of amounts owing to such Person as of the date of the Order or due on or before the expiry of the Stay Period or in satisfaction of any interest or charges accruing in respect thereof; however, this provision shall not prevent any financial institution from: (i) reimbursing themselves for the amount

of any cheques drawn by Applicants and properly honoured by such institution, or (ii) holding the amount of any cheques or other instruments deposited into the Applicants' account until those cheques or other instruments have been honoured by the financial institution on which they have been drawn.

**Non-Derogation of Rights**

20. **ORDERS** that, notwithstanding the foregoing, any Person who provided any kind of letter of credit, guarantee or bond (the "**Issuing Party**") at the request of the Applicants shall be required to continue honouring any and all such letters, guarantees and bonds, issued on or before the date of the Order, provided that all conditions under such letters, guarantees and bonds are met save and except for defaults resulting from this Order; however, the Issuing Party shall be entitled, where applicable, to retain the bills of lading or shipping or other documents relating thereto until paid.

**Syndicated Lenders Unaffected**

21. **ORDERS** and **DECLARES** that Bank of Montreal ("**BMO**"), National Bank of Canada, Fédération des Caisses Desjardins and HSBC Bank Canada (collectively, the "**Syndicated Lenders**") are unaffected by this Order or the CCAA Proceedings, or pursuant to any proposal to be filed pursuant to the BIA or any other proceedings initiated thereunder, and the relationship between the Applicants and the Syndicated Lenders shall continue as if this Order had not been granted. Without limiting the generality of the foregoing, the Syndicated Lenders shall not be subject to the stay of proceedings, as ordered herein, including during the Stay Period or any renewal or extension thereof, or to any other limitations of creditors' right or recourses under this Order. Nothing in this Order shall prevent the Syndicated Lenders from enforcing their security or their contractual rights as against the applicable Applicant, subject only to the Syndicated Lenders providing at least 5 business days advance written notice of their intention to do so to the Applicants and to the Monitor (the "**Syndicate Notice Period**"). Upon expiration of the Syndicated Notice Period, nothing in this Order shall preclude BMO, in its capacity as administrative agent for the Syndicated Lenders, from taking any and all steps under the loan documents and otherwise permitted at law, but without having to send any demands or notices under Section 244 of the BIA.

22. **ORDERS** that the Syndicated Lenders shall be treated as unaffected creditors in any Plan and, notwithstanding anything contained in such Plan, shall be completely unaffected thereby.

**Directors' and Officers' Indemnification and Charge**

23. **ORDERS** that the Applicants shall indemnify their Directors from all claims relating to any obligations or liabilities they may incur and which have accrued by reason of or in relation to their respective capacities as directors or officers of the Applicants after the Effective Time, except where such obligations or liabilities

were incurred as a result of such directors' or officers' gross negligence, wilful misconduct or gross or intentional fault as further detailed in Section 11.51 CCAA.

24. **ORDERS** that the Directors of the Applicants shall be entitled to the benefit of and are hereby granted a charge and security in the Property of the Applicants to the extent of the aggregate amount of $330,000 (the "**Directors' Charge**"), as security for the indemnity provided in paragraph 23 of this Order as it relates to obligations and liabilities that the Directors may incur in such capacity after the Effective Time. The Directors' Charge shall have the priority set out in paragraphs 38 and 39 of this Order.

25. **ORDERS** that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Directors shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts for which the Directors are entitled to be indemnified in accordance with paragraph 24 of this Order.

**Restructuring**

26. **DECLARES** that, to facilitate the orderly restructuring of their business and financial affairs (the "**Restructuring**") but subject to such requirements as are imposed by the CCAA, the Applicants shall, in consultation with the Syndicated Lenders, have the right, subject to approval of the Monitor or further order of the Court, to:

    (a) permanently or temporarily cease, downsize or shut down any of their operations or locations as they deem appropriate and make provision for the consequences thereof in the Plan;

    (b) pursue all avenues to finance or refinance, market, convey, transfer, assign or in any other manner dispose of the Business or Property, in whole or part, subject to further order of the Court and sections 11.3 and 36 CCAA, and under reserve of subparagraph (c);

    (c) convey, transfer, assign, lease, or in any other manner dispose of the Property, outside of the ordinary course of business, in whole or in part, provided that the price in each case does not exceed $500,000 or $1,500,00 in the aggregate;

    (d) terminate the employment of their employees or temporarily or permanently lay off their employees as they deem appropriate and, to the extent that any amounts in lieu of notice, termination, or severance pay or other amounts in respect thereof are not paid in the ordinary course, make provision, on such terms as may be agreed upon between the Applicants

   and such employees or, failing such an agreement, make provision to deal with, any consequences thereof in the Plan, as the Applicants may determine;

  (e) subject to the provisions of section 32 CCAA, disclaim or resiliate any of their agreements, contracts or arrangements of any nature whatsoever, with such disclaimers or resiliations to be on such terms as may be agreed between the Applicants and the relevant party or, failing such an agreement, to make provision for the consequences thereof in the Plan; and

  (f) subject to section 11.3 CCAA, assign any rights or obligations of the Applicants.

27. **DECLARES** that, if a notice of disclaimer or resiliation is given to a landlord of the Applicants pursuant to section 32 of the CCAA and subsection 26(e) of this Order, then (a) during the notice period prior to the effective time of the disclaimer or resiliation, the landlord may show the affected leased premises to prospective tenants during normal business hours by giving the Applicants and the Monitor 24 hours' prior written notice and (b) at the effective time of the disclaimer or resiliation, the landlord shall be entitled to take possession of any such leased premises and re-lease any such leased premises to third parties on such terms as the landlord may determine, without waiver of, or prejudice to, any claims or rights of the landlord against the Applicants, provided nothing herein shall relieve a landlord of its obligation to mitigate any damages claimed in connection therewith.

28. **ORDERS** that the Applicants shall provide to any relevant landlord notice of the Applicants' intention to remove any fittings, fixtures, installations or leasehold improvements at least seven (7) days in advance. If the Applicants have already vacated the leased premises, they shall not be considered to be in occupation of such location pending the resolution of any dispute between the Applicants and the landlord.

29. **DECLARES** that, in order to facilitate the Restructuring, the Applicants may, subject to the approval of the Monitor or further order of the Court, settle claims of customers and suppliers that are in dispute.

30. **DECLARES** that, pursuant to sub-paragraph 7(3)(c) of the *Personal Information Protection and Electronic Documents Act*, S.C. 2000, c.5, and equivalent provisions of the *Act Respecting the Protection of Personal Information in the Private Sector*, R.S.Q. c. P-39.1, the Applicants are permitted, in the course of these proceedings, to disclose personal information of identifiable individuals in their possession or control to stakeholders or prospective investors, financiers, buyers, or strategic partners and to their advisers (individually, a "**Third Party**"), but only to the extent desirable or required to negotiate and complete the Restructuring or the preparation and implementation of the Plan or a transaction

for that purpose, provided that the Persons to whom such personal information is disclosed enter into confidentiality agreements with the Applicants binding them to maintain and protect the privacy of such information and to limit the use of such information to the extent necessary to complete the transaction or Restructuring then under negotiation. Upon the completion of the use of personal information for the limited purpose set out herein, the personal information shall be returned to the Applicants or destroyed. In the event that a Third Party acquires personal information as part of the Restructuring or the preparation or implementation of the Plan or a transaction in furtherance thereof, such Third Party may continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the Applicants.

**Powers of the Monitor**

31.   **ORDERS** that Deloitte Restructuring Inc., a licensed insolvency trustee, is hereby appointed to monitor the business and financial affairs of the Applicants as an officer of this Court (the "**Monitor**") and that the Monitor, in addition to the prescribed powers and obligations, referred to in section 23 of the CCAA:

  (a)   shall, without delay, (i) publish in the National Post, La Presse and the Wall Street Journal and (ii) within five (5) business days after the date of this Order, (A) post on the Monitor's website (the "**Website**"), a notice containing the information prescribed under the CCAA, (B) make this Order publicly available in the manner prescribed under the CCAA, (C) send, in the prescribed manner, a notice to all known creditors having a claim against the Applicants of more than $1,000, advising them that the Order is publicly available, and (D) prepare a list showing the names and addresses of such creditors and the estimated amounts of their respective claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder;

  (b)   shall monitor the Applicants' receipts and disbursements;

  (c)   shall assist the Applicants, to the extent required by the Applicants, in dealing with their creditors and other interested Persons during the Stay Period;

  (d)   shall assist the Applicants, to the extent required by the Applicants, with the preparation of their cash-flow projections and any other projections or reports and the development, negotiation and implementation of the Plan;

  (e)   shall advise and assist the Applicants, to the extent required by the Applicants, to review the Applicants' business and assess opportunities for cost reduction, revenue enhancement, and operating efficiencies;

  (f)   shall assist the Applicants, to the extent required by the Applicants, with the Restructuring and in their negotiations with their creditors and other

          interested Persons and with the holding and administering of any meetings held to consider the Plan;

(g)     shall report to the Court on the state of the business and financial affairs of the Applicants or developments in these proceedings or any related proceedings within the time limits set forth in the CCAA and at such time as considered appropriate by the Monitor or as the Court may order;

(h)     shall report to the Syndicated Lenders on the state of the operations, business and financial affairs of the Applicants or developments in the CCAA Proceedings or any related proceedings;

(i)     shall report to this Court and interested parties, including but not limited to creditors affected by the Plan, with respect to the Monitor's assessment of, and recommendations with respect to, the Plan;

(j)     may retain and employ such agents, advisers and other assistants as are reasonably necessary for the purpose of carrying out the terms of the Order, including, without limitation, one or more entities related to or affiliated with the Monitor;

(k)     may engage legal counsel to the extent the Monitor considers necessary in connection with the exercise of its powers or the discharge of its obligations in these proceedings and any related proceeding, under the Order or under the CCAA;

(l)     may act as a "foreign representative" of the Applicants or in any other similar capacity in any insolvency, bankruptcy or reorganisation proceedings outside of Canada;

(m)     may give any consent or approval as may be contemplated by the Order or the CCAA; and

(n)     may perform such other duties as are required by the Order or the CCAA or by this Court from time to time.

Unless expressly authorized to do so by this Court, the Monitor shall not otherwise interfere with the business and financial affairs carried on by the Applicants, and the Monitor is not empowered to take possession of the Property nor to manage any of the business and financial affairs of the Applicants.

32.     **ORDERS** that the Applicants and their Directors, officers, employees and agents, accountants, auditors and all other Persons having notice of the Order shall forthwith provide the Monitor with unrestricted access to all of the Business and Property, including, without limitation, the premises, books, records, data, including data in electronic form, and all other documents of the Applicants in connection with the Monitor's duties and responsibilities hereunder.

33. **DECLARES** that the Monitor may provide creditors and other relevant stakeholders of the Applicants with information in response to requests made by them in writing addressed to the Monitor and copied to the Applicants' counsel. In the case of information that the Monitor has been advised by the Applicants is confidential, proprietary or competitive, the Monitor shall not provide such information to any Person without the consent of the Applicants, unless otherwise directed by this Court.

34. **DECLARES** that, if the Monitor, in its capacity as Monitor, carries on the business of the Applicants or continues the employment of the Applicants' employees, the Monitor shall benefit from the provisions of section 11.8 of the CCAA.

35. **DECLARES** that no action or other proceedings shall be commenced against the Monitor relating to its appointment, its conduct as Monitor, or the carrying out the provisions of any order of this Court, except with prior leave of this Court, on at least ten (10) days notice to the Monitor and its counsel. The entities related to or affiliated with the Monitor referred to in subparagraph 31(j) hereof shall also be entitled to the protection, benefits and privileges afforded to the Monitor pursuant to this paragraph.

36. **ORDERS** that Applicants shall pay the reasonable fees and disbursements of the Monitor, the Monitor's legal counsel, the Applicants' legal counsel, and other advisers that are directly related to these proceedings, the Plan, and the Restructuring, whether incurred before or after the Order, and shall provide each with a reasonable retainer in advance on account of such fees and disbursements, if so requested.

37. **DECLARES** that the Monitor, the Monitor's legal counsel (Norton Rose Fullbright Canada LLP and Norton Rose Fullbright US LLP), the Applicants' legal counsel (Davies Ward Phillips & Vineberg LLP), legal counsel to the Syndicated Lenders (Osler Hoskin & Harcourt LLP and McDonald Hopkins), as security for the professional fees and disbursements incurred both before and after the making of the Order and directly related to these proceedings, the Plan, and the Restructuring, be entitled to the benefit of and are hereby granted a charge and security in the Property of the Applicants to the extent of the aggregate amount of $300,000 (the "**Administration Charge**"), having the priority established by paragraphs 38 and 39 hereof. Davies Ward Phillips & Vineberg LLP shall rank first amongst the beneficiairies of the Administation Charge listed in this paragraph.

**Priorities and General Provisions Relating to CCAA Charges**

38. **DECLARES** that the priorities of the Administration Charge, the Directors' Charge (collectively, the "**CCAA Charges**") and the Syndicated Lenders' Security (as defined in the Application), as between them with respect to any Property to which they apply, shall be as follows:

    (a)   first, the Administration Charge;

    (b)    second, the Syndicated Lenders' Security; and

    (c)    third, the Directors' Charge.

39.  **DECLARES** that each of the CCAA Charges shall rank in priority to any and all other hypothecs, mortgages, liens, security interests, priorities, charges, encumbrances or security of whatever nature or kind (collectively, the "**Encumbrances**") affecting the Property charged by such Encumbrances, other than the Directors' Charge, which shall rank after the Syndicated Lenders' Security.

40.  **ORDERS** that, except as otherwise expressly provided for herein, the Applicants shall not grant any Encumbrances in or against any Property that rank in priority to, or *pari passu* with, any of the CCAA Charges, unless the Applicants obtain the prior written consent of the Monitor, the Syndicated Lenders, and the prior approval of the Court.

41.  **DECLARES** that each of the CCAA Charges shall attach, as of the Effective Time, to all present and future Property of the Applicants, notwithstanding any requirement for the consent of any party to any such charge or to comply with any condition precedent.

42.  **DECLARES** that the CCAA Charges and the rights and remedies of the beneficiaries of such Charges, as applicable, shall be valid and enforceable and shall not otherwise be limited or impaired in any way by: (i) these proceedings and the declaration of insolvency made herein; (ii) any application for a bankruptcy order filed pursuant to the BIA in respect of the Applicants or any bankruptcy order made pursuant to any such application or any assignment in bankruptcy made or deemed to be made in respect of the Applicants; or (iii) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt, or the creation of Encumbrances, contained in any agreement, lease, sub-lease, offer to lease or other arrangement which binds the Applicants (a "**Third Party Agreement**"), and notwithstanding any provision to the contrary in any Third Party Agreement:

    (a)    the creation of any of the CCAA Charges shall not create or be deemed to constitute a breach by the Applicants of any Third Party Agreement to which it is a party; and

    (b)    any of the beneficiaries of the CCAA Charges shall not have liability to any Person whatsoever as a result of any breach of any Third Party Agreement caused by or resulting from the creation of the CCAA Charges.

43.  **DECLARES** that notwithstanding: (i) these proceedings and any declaration of insolvency made herein, (ii) any application for a bankruptcy order filed pursuant to the BIA in respect of the Applicants and any bankruptcy order allowing such application or any assignment in bankruptcy made or deemed to be made in

respect of the Applicants, and (iii) the provisions of any federal or provincial statute, the payments or disposition of Property made by the Applicants pursuant to the Order and the granting of the CCAA Charges, do not and will not constitute settlements, fraudulent preferences, fraudulent conveyances, transfers at undervalue or other challengeable or reviewable transactions or conduct meriting an oppression remedy under any applicable law.

44. **DECLARES** that the CCAA Charges shall be valid and enforceable as against all Property of the Applicants and against all Persons, including, without limitation, any trustee in bankruptcy, receiver, receiver and manager or interim receiver of the Applicants, for all purposes.

**Comeback Hearing**

45. **ORDERS** that the comeback hearing on the Application shall take place on March 27, 2024 at 9:30 am by videoconference and in room 16.11, and **PRAYS ACT** of the undertaking of Debtors' counsel to communicate this information in advance of such hearing to the parties having responded to the Application or identified on the service list maintained for these CCAA proceedings.

**General**

46. **ORDERS** that no Person shall commence, proceed with or enforce any Proceedings against any of the Directors, employees, legal counsel, or financial advisers of the Applicants or of the Monitor in relation to the Business or Property of the Applicants, without first obtaining leave of this Court, upon ten (10) days' written notice to the Applicants and to all those referred to in this paragraph whom it is proposed be named in such Proceedings.

47. **DECLARES** that the Order and any proceeding or affidavit leading to the Order, shall not, in and of themselves, constitute a default or failure to comply by the Applicants under any statute, regulation, licence, permit, contract, permission, covenant, agreement, undertaking or other written document or requirement.

48. **DECLARES** that, except as otherwise specified herein, the Applicants and the Monitor are at liberty to serve any notice, proof of claim form, proxy, circular or other document in connection with these proceedings by forwarding copies by prepaid ordinary mail, courier, personal delivery, or electronic transmission to Persons or other appropriate parties at their respective given addresses as last shown on the records of the Applicants and that any such service shall be deemed to be received on the date of delivery if by personal delivery or electronic transmission, on the following business day if delivered by courier, or three business days after mailing if by ordinary mail.

49. **DECLARES** that the Applicants and any party to these proceedings may serve any court materials in these proceedings on all represented parties electronically, by emailing a PDF or other electronic copy of such materials to counsels' email addresses.

50. **DECLARES** that, unless otherwise provided herein, under the CCAA, or ordered by this Court, no document, order or other material need be served on any Person in respect of these proceedings unless such Person has served a Notice of Appearance on the solicitors for the Applicants and the Monitor and has filed such notice with this Court, or appears on the service list prepared by the Monitor or its attorneys, save and except when an order is sought against a Person not previously involved in these proceedings.

51. **DECLARES** that the Applicants or the Monitor may, from time to time, apply to this Court for directions concerning the exercise of their respective powers, duties and rights hereunder or in respect of the proper execution of the Order on notice only to each other.

52. **DECLARES** that the Order and all other orders in these proceedings shall have full force and effect in all provinces and territories in Canada.

53. **AUTHORIZES** the Monitor or the Applicants to apply as they may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America or elsewhere, for orders which aid and complement this Order and any subsequent orders of this Court and, without limitation to the foregoing, any orders under Chapter 15 of the U.S. Bankruptcy Code, including an order for recognition of these CCAA proceedings as "Foreign Main Proceedings" in the United States of America pursuant to Chapter 15 of the U.S. Bankruptcy Code, for which the Monitor, shall be the foreign representative of the Applicants. All courts and administrative bodies of all such jurisdictions are hereby respectively requested to make such orders and to provide such assistance to the Applicants and the Monitor as may be deemed necessary or appropriate for that purpose.

54. **REQUESTS** the aid and recognition of any Court, tribunal, regulatory or administrative body in any Province of Canada and any Canadian federal court or in the United States of America, including without limitation the United States Bankruptcy Court for the District of Delaware, and any court or administrative body elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All Courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and the Monitor as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor or the authorized representative of the Applicants in any foreign proceeding, to assist the Applicants, and the Monitor, and to act in aid of and to be complementary to this Court, in carrying out the terms of this Order.

55. **DECLARES** that, for the purposes of any applications authorized by paragraphs 53 and 54 of this Order, the Applicants' centre of main interest is located in Montréal, Québec, Canada.

56. **ORDERS** that Exhibits P-21, P-24 and P-25 and the Appendices A, B and D of Exhibit P-14 be kept under seal until further order from this Court.

57. **ORDERS** the provisional execution of the Order notwithstanding any appeal.

_____

MARTIN F. SHEEHAN, J.S.C.