IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| In re: | Chapter 15 |
| GOLI NUTRITION INC., *et al.*,[1] | Case No. 24-10438 (LSS) |
| Debtors in a Foreign Proceeding. | Joint Administration Requested |

---

**DECLARATION OF NOAH ZUCKER IN SUPPORT
OF (A) PETITIONER'S VERIFIED PETITION UNDER CHAPTER 15 FOR
RECOGNITION OF THE CANADIAN PROCEEDINGS AND REQUEST
FOR RELATED RELIEF, (B) MOTION FOR PROVISIONAL RELIEF, AND (C)
MOTION FOR ORDER ENFORCING CCAA VESTING ORDERS**

I, Noah Zucker, to the best of my information and belief, state as follows:

1.    I am over the age of 18 and, except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my opinion based upon my experience and knowledge of the Debtors' operations and financial condition according to the information provided to me in that respect, my review of relevant documents (including the petition for recognition) or other information supplied to me. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this declaration.

2.    This declaration contains statements of legal opinion and statements of fact. Where the matters stated in this declaration are statements of legal opinion, such statements are based upon my experience as a practicing lawyer admitted and licensed to practice in the Province of Québec, Canada.

---

[1] The Debtors in these Chapter 15 cases, are: Goli Nutrition, Inc., a company incorporated in Québec, Canada and the last 4 digits of its Canadian business number is 0002; and Goli Nutrition Inc., a company incorporated in Delaware and the last 4 digits of its federal tax identification number is 2655. The Debtors are collectively managed from their corporate headquarters which are located at 2205 Boul. De la Côte-Vertu, suite 200, Montreal, Québec, Canada.

{1431.001-W0075022.}

3. I am a Senior Associate of the Canadian law firm of Norton Rose Fulbright Canada LLP, 1 Place Ville-Marie, Montréal, Quebec, Canada, H3B 1R1, Suite 2500. Norton Rose Fulbright Canada LLP is Canadian counsel to Deloitte Restructuring Inc., as the court-appointed monitor (the "Monitor") in the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended ("CCAA") proceedings of the Debtors (the "Canadian Proceedings").

4. I submit this declaration in support of (A) *Petitioner's Verified Petition under Chapter 15 for Recognition of the Canadian Proceedings and Request for Related Relief* (together with the form petitions filed concurrently therewith, the "Petition"), (B) the *Petitioner's Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code* (the "Provisional Relief Motion"), and (C) the Motion for Order Enforcing the CCAA Vesting Orders.[2]

## Professional Background and Qualifications

5. I attended Université de Montréal where I graduated with a Bachelor of Law (LL.B) degree (Civil Law) and a Juris Doctor (J.D.) degree (Common Law) in 2013. I was admitted to the Quebec Bar in 2013.

6. I have extensive experience in the field of Canadian insolvency and restructuring law. Insolvency matters in which I have been involved include, among others, the Canadian Proceedings of: (i) Groupe Sélection Inc., (ii) Forex Inc., (iii) BlackRock Metals Inc., (iv) Aldo Group Inc., and (iv) Groupe Dynamite Inc. I have experience acting for debtor companies, court-appointed officers (monitors, trustees and receivers), secured and unsecured creditors and other stakeholders.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Petition.

7. My expertise in Canadian insolvency and restructuring law was recently recognized in *The Best Lawyers in Canada* 2024 in the areas of Insolvency and Financial Restructuring Law and Banking and Finance Law.

**The Debtors' Canadian Proceedings**

8. On March 15, 2024, Goli Canada and its wholly owned subsidiary, Goli US, filed an application (the "CCAA Initial Application") with the Superior Court of Québec, sitting in the Commercial Division for the district of Montréal as the designated court pursuant to the CCAA (the "Canadian Court"), seeking the entry of an initial order (the "Initial Order"). On March 18, 2024, the Canadian Court issued the Initial Order as described in greater detail below and in the Petition. Pursuant to the Initial Order, Deloitte Restructuring Inc. was appointed as Monitor in the Canadian Proceedings and was authorized to act as the "foreign representative" of the Debtors in connection with seeking cross-border approval of the Canadian Proceedings, including, specifically, seeking an order for recognition of the Canadian Proceedings pursuant to Chapter 15 of the Bankruptcy Code. The Initial Order further confirms that Montreal, Québec, Canada is the Debtors' center of main interests.

9. A complete description of the Debtors and the events leading to the filing of the Canadian Proceedings are set forth in the Petition. However, I wish to specifically call the Court's attention to certain key facts regarding the Debtors' management and operations, which demonstrate, as confirmed by the Canadian Court, the Canada-centric nature of the enterprise as a whole. Additionally, I wish to describe the contemplated mechanics of the Canadian Proceedings and their operation under the CCAA.

10. As described in the Petition, the Debtors commenced the Canadian Proceedings in order to implement a restructuring centered around the sale of the Debtors' business

and assets, which is to be effectuated through two separate transactions. In particular, following a sale investment solicitation process (a "SISP") that took place prior to the commencement of the Canadian Proceedings, Goli Canada entered into a binding subscription agreement (the "Subscription Agreement") with an entity affiliated with a group of that includes Group KPS (a healthcare company), Bastion Capital (an investment management firm) and one of the Debtors' founders (collectively, the "Purchaser"), pursuant to which the Purchaser will subscribe for new shares in Goli Canada and effectively acquire 100% of the equity interest in Goli Canada in accordance with the terms and conditions of the Subscription Agreement (the "Principal Transaction"). The Principal Transaction is intended to be approved and implemented under the CCAA pursuant to a reverse vesting order ("RVO"), as requested in the CCAA Initial Application and described in greater detail below. Pursuant to the RVO, certain excluded assets (including notably the Atos Equipment and shares of Goli US), contracts and liabilities will be transferred or "vested out" of Goli Canada and transferred to a newly created "ResidualCo" entity that will replace Goli Canada as a debtor in the Canadian Proceedings. Accordingly, Residual Co. will replace Goli Canada as a debtor in the Chapter 15 case upon the closing of the Principal Transaction.

11. In addition, the Debtors have negotiated and finalized the terms of a second and separate transaction to implement the liquidation of the Atos Equipment. Specifically, the Debtors have entered into an agency agreement (the "Agency Agreement") with Gordon Brothers Commercial & Industrial, LLC ("Gordon Brothers"), acting in a joint venture with certain other parties, to sell and auction the Atos Equipment in accordance with the Agency Agreement (the "Atos Sale" and, together with the Principal Transaction, the "Sale Transactions"). Pursuant to the CCAA Initial Application, the Debtors are seeking an order from the Canadian Court approving

Goli Canada's entry into the Agency Agreement, to which Goli US will intervene, and authorizing the sale of the Atos Equipment (the "<u>Atos Sale Order</u>" and, together with the RVO, the "<u>CCAA Vesting Orders</u>").

12.     The Initial Order provides for a broad stay of proceedings against the Debtors without leave of the Canadian Court. In particular, through and including March 27, 2024 (the "<u>Stay Period</u>"), "no proceeding or enforcement process in any court or tribunal (each, a "Proceeding") shall be commenced or continued against or in respect of the [Debtors], or affecting the [Debtors'] business operations and activities (the "Business") or the Property … except with leave of this Court." Initial Order, ¶ 10.

13.     On March 27, 2024, the Canadian Court will hold a hearing (the "<u>Comeback Hearing</u>") to approve an extension of the automatic stay that is in place in the CCAA Proceedings. Initial Order, ¶ 45. The Debtors are also requesting a subsequent hearing to take place approximately one week after the Comeback Hearing for the Canadian Court to consider approval of the Sale Transactions (the "<u>CCAA Sale Approval Hearing</u>"). The Petitioner anticipates that the Canadian Court will approve the Sale Transactions and enter the CCAA Vesting Orders at or shortly following the CCAA Sale Approval Hearing.

**Overview of a CCAA Proceeding**

14.     The CCAA provides for a court-supervised reorganization procedure designed to enable financially distressed companies to avoid foreclosure or seizure of assets while maximizing the company's value as a going concern for the benefit of creditors and other parties in interest.

15.     Pursuant to Section 9 of the CCAA, proceedings under the CCAA are commenced by Application to the court that has jurisdiction in the province within which the head

office or chief place of business of a debtor company in Canada is situated, or, if the debtor company has no place of business in Canada, in any province within which any assets of the company are situated. The debtor's assets and affairs are subject to the supervision of the Canadian Court during the pendency of a CCAA proceeding.

16. Here, the Canadian Proceedings were commenced by filing the CCAA Initial Application with the Canadian Court pursuant to, *inter alia*, the CCAA and the *Code of Civil Procedure*, C.Q.L.R., c. C.25.01 (Québec).

17. The CCAA is federal legislation in Canada. Its full title is "an Act to facilitate compromises and arrangements between companies and their creditors." The CCAA applies in respect of a debtor company or affiliated debtor companies if the total claims against such debtor company or affiliated debtor companies, determined in accordance with the CCAA, is more than CA$5,000,000. A "debtor company" includes a company that is bankrupt or insolvent.

18. Section 11.02 of the CCAA states that the court may, on an initial application in respect of a debtor company, make an order on any terms that it may impose: (i) staying all proceedings taken or that may be taken in respect of the debtor company under certain statutes; (ii) restraining further proceedings in any action, suit or proceeding against the debtor company; and (iii) prohibiting the commencement of any action suit or proceeding against the debtor company.

19. Upon the granting of an initial order in a CCAA proceeding, the debtor company's assets will become the subject of the supervision of the court that has granted the initial order. Specifically:

> a) subject to the provisions of the CCAA and, in particular, section 11.001 and section 36 thereof, a debtor company that has commenced proceedings under the CCAA may, with court approval, sell or otherwise dispose of assets outside the ordinary course of business;

  b) the stay of proceedings granted in favor of the debtor company will be for an initial period that may not exceed 10 days and will be subject to renewal at a comeback hearing. The stay of proceedings may be renewed periodically by motion to the court in accordance with Section 11.02 of the CCAA;

  c) the initial order, as amended and extended at the comeback hearing, as the case may be, can contemplate a vast array of relief and restructuring measures. By way of example, the initial order may (and will often) grant the debtor company authorization to utilize its cash management systems, borrow under interim financing arrangements that may be the subject of a court-approved priority charge, and place certain restrictions on the debtor company's authority to sell assets, repay obligations, grant security and incur obligations outside of the ordinary course of business; and

  d) the court retains broad discretion under Section 11 of the CCAA to "make any order that it considers appropriate in the circumstances" on application by any person interested in the matter.

20. As noted above, the Canadian Court issued the Initial Order with respect to the Debtors on March 18, 2024.

21. In a CCAA proceeding, absent exceptional circumstances, a debtor's management and board of directors remain in place, and the board maintains its power under Canadian law to approve significant actions, including disposing of important assets, borrowing significant amounts, or changing corporate structures, subject to oversight by a court-appointed monitor (discussed below) and approval of the court.

22. When an order is made on an initial application commencing a proceeding under the CCAA, the court shall at the same time appoint a monitor as an independent court officer pursuant to Section 11.7 of the CCAA, who functions as an independent court officer in the CCAA proceeding (i) monitors the company's ongoing operations, (ii) reports to the court on any major events affecting the company, (iii) notifies the company's creditors of any meetings and tabulates votes at these meetings, if held, (iv) assists with preparing, filing, and holding meetings for voting on the plan of arrangement, (v) approves the disclaimer of contracts and leases, (vi) may prepare reports in conjunction with any interlocutory motions by the company or other stakeholders, and

(vii) prepares a report on the plan of arrangement, which is usually included in the mailing of the plan, if one is filed. The monitor acts as the "eyes and ears of the court." The person so appointed as monitor must be a licensed insolvency trustee. As noted above, the Petitioner was appointed as the Monitor in the Canadian Proceedings. In some cases, the monitor will also be granted expanded powers to implement the restructuring process for and on behalf of the debtor company.

23. Generally speaking, a proceeding under the CCAA is a judicial proceeding in Canada, dealing with creditors' collective interests generally, pertaining to insolvency. The CCAA addresses debtor companies that are insolvent or bankrupt and provides for an opportunity to compel a minority of creditors to follow the wishes of the majority if the appropriate voting thresholds are met, provides for the possibility of a stay of proceedings while the restructuring is progressing, and allows for various relief and measures to facilitate a restructuring, all under the supervision of the court.

24. Section 19 of the CCAA describes the claims that may be dealt with by a compromise or arrangement in respect of a debtor company. A court approved process to call for and determine creditors' claims is often implemented in the course of a CCAA proceeding. The purpose of the CCAA being to provide a court-supervised process that is collective in nature to facilitate the negotiation of compromises and arrangements where companies are experiencing financial distress, with the overarching objectives, where possible, to (i) maximize creditor recovery, (ii) preserve and restructure in a viable way the operations of the business, and (iii) generally to avoid the consequences resulting from the insolvency of the debtor, for the benefit of its creditors and stakeholders. A claims resolution process is part of a CCAA proceeding, where, with authorization of the court, the mechanism and procedures for filing, proving and adjudicating

claims will be set out. The determination of classification of creditors, and the class of creditors which may be affected or not, will depend on the circumstances of each case.

25. A proceeding under the CCAA can be undertaken for the purpose of liquidation or reorganization:

   a) A debtor company may seek to reorganize by proposing a plan of compromise or arrangement to be voted upon by creditors, and if approved by the requisite majority of creditors, implemented with the approval of the court pursuant to Sections 4 through 6 of the CCAA.
   b) As noted above, the assets of the debtor company can be sold, as a going concern or otherwise, outside of the ordinary course of business with court approval pursuant to Section 36 of the CCAA following consideration of, among other things, certain specified statutory factors.

26. Throughout a CCAA proceeding, the court retains broad discretion to "make any order that it considers appropriate in the circumstances."

27. In a CCAA proceeding, subject to limited exceptions, clauses triggering termination rights upon the debtor's commencement of an insolvency proceeding are not enforceable, so contract counterparties may not terminate contracts solely by virtue of the commencement of the CCAA proceeding. Preferential or fraudulent transfers are not permitted under the CCAA, which provides for the avoidance and recovery of such transfers. A monitor in a CCAA proceeding may challenge a transaction as "preferential" if: (1) the debtor was insolvent at the time of the transaction; (2) the transaction took place during the applicable statutory review period; and (3) the transaction was taken with a view to giving that creditor a preference over other creditors.

28. In general, creditors will be provided with notice and an opportunity to retain counsel, to appear, to raise objections, and to appeal with respect to matters raised in a CCAA proceeding. All creditors of the Debtors, including creditors located in the U.S., are

generally afforded the same protections, and are subject to the same procedures and requirements, in the Canadian Proceedings.

## Sales under the CCAA

29.     Recent Canadian Proceedings have typically included and resulted in one or more of the following: (i) the filing of a plan of arrangement, (ii) the implementation of one or more asset sales, or (iii) the implementation of an asset disposition through an RVO-structured transaction.

30.     The first, a plan of arrangement, generally allows a debtor to emerge as a "new and improved" restructured company while retaining possession of its assets, agreements, employees, permits, licenses and tax attributes. This process is similar to a traditional reorganization in a chapter 11 case under the Bankruptcy Code, where the debtor emerges after confirmation of a plan of reorganization. For a plan of arrangement to be binding on each class of creditors, a majority of the proven creditors in that class, by number, together with two-thirds (2/3) of the proven creditors in that class, by dollar value, may approve of the plan presented to them. If a class of creditors approves the plan, it is binding on all creditors within the class, subject to the court's approval of the plan. If all of the classes of creditors approve the plan, the court must then sanction the plan as a final step. Upon court approval, the company continues forward as outlined under the plan until it has satisfied the requirements under the plan.

31.     The second, an asset sale under the CCAA, is akin to a section 363 sale process under the Bankruptcy Code. In this instance, after a considerable marketing campaign that was conducted by an investment banker and which included input and consultation from the Lenders (i.e., the SISP), the Debtors concluded that there was little interest in the Atos Equipment from the strategic buyers that had been contacted. Consequently, the Debtors and the Lenders

selected Gordon Brothers to implement an auction process for the sale of the Atos Equipment in accordance with the terms of the Agency Agreement. Pursuant to the CCAA Initial Application, the Debtors are seeking approval of the Atos Sale Order approving Goli Canada's entry into the Agency Agreement, to which Goli US will intervene, and authorizing the sale of the Atos Equipment.

32. The third, an RVO, is an alternative structure for transferring the business and assets of a debtor company to a purchaser, typically utilized where the debtor company has assets that cannot easily be transferred as part of a traditional asset sale process (*e.g.*, licenses, regulatory permits and tax attributes). An RVO generally involves a series of steps, whereby: (1) the purchaser becomes the sole shareholder of the debtor company; (2) the debtor company retains its assets, including key contracts and permits; and (3) the assets and liabilities not retained by the debtor company are "vested out" and transferred, together with any excluded assets, into a newly incorporated entity. Those liabilities that the purchaser does not assume are transferred to the new residual corporation, along with any assets that the purchaser elects to leave behind. These, along with the residual corporation, may be liquidated using a CCAA plan or wound up through a similar process under Canadian law. The debtor company, now holding only those assumed assets and liabilities desired by the purchaser, may exit the insolvency proceeding on a going-concern basis.[3]

---

[3] Numerous RVO transactions have been approved by Canadian courts, including *Acerus Pharmaceuticals Corp.*, 2023 ONSC 3314; *Arrangement relatif à Blackrock Metals Inc.*, 2022 QCCS 2828; *Harte Gold Corp. (Re)*, 2022 ONSC 653 *Plasco Energy*, 2015 ONSC 10869; *Stornoway Diamond Corp.*, Montreal, 500-11-057094-191 (Quebec SCJ [Commercial Div.]) (Oct. 7, 2019); *Wayland Group Corp.*, Toronto, CV-19- 00632079-00CL (Ont. SCJ [Commercial List]) (Apr. 21, 2020); *Re Comark Holdings Inc.*, Toronto CV-20-00642013-00CL (Ont. SCJ [Commercial List]) (July 13, 2020); *Beleave Inc.*, CITE; *Arrangement relative a Nemaska Lithium inc.*, 2020 QCCA 1488; *JMB Crushing Systems, Inc. (Re)*, 2020 ABQB 763; *Cirque due Soleil Canada Inc*, Montreal, 500-11-058415-205 (Quebec SCJ [Commercial Div.]) (Oct. 26, 2020); *Green Relief Inc. (Re)*, 2020 ONSC 6837; *Quest University (Re)*, 2020 BCSC 1883; *JMX Contracting Inc.*, Toronto, CV-20-00648528-00CL (Ont. SCJ [Commercial List]) (Feb. 2, 2021); *Salt Bush Energy Ltd.*, Calgary, 2101-06512 (CQB Alberta) (May 21, 2021); *Port Capital Development (EV) Inc.*, Vancouver, S-205095 (SCBC) (Sept. 16, 2022). I am informed by U.S. counsel that RVO transactions have been recognized and enforced in the U.S. under Chapter 15 on several occasions, including by bankruptcy courts in this district. *See In re In re Acerus Pharmaceuticals Corp., et al.*, No. 23-10111 (TMH) (Bankr. D. Del. June 13, 2023), Docket No. 78; *In Re NextPoint Financial Inc., et al.*, No.

As recognized by Canadian courts, in situations (as here) where shareholders have no economic interest, present or future, it is within the Canadian Court's jurisdiction to approve the cancellation of all outstanding shares and the issuance of new shares to the purchaser.

33. Here, pursuant to the CCAA Initial Application, the Debtors are seeking an RVO approving the Subscription Agreement and the Principal Transaction that will result in the Purchaser acquiring 100% of the equity interest in Goli Canada[4] in accordance with the terms and conditions of the Subscription Agreement, and the vesting of certain excluded assets (including notably the Atos Equipment and shares of Goli US), contracts and liabilities to "ResidualCo." Upon entry of the RVO, Residual Co. will replace Goli Canada as a debtor in the Canadian Proceedings. The RVO terminates and cancels all options, securities and other rights held by any person that are convertible or exchangeable for any securities of Goli Canada. The cancellation of all outstanding shares and the issuance of new shares to the Purchaser pursuant to the RVO, was within the jurisdiction of the Canadian Court. *See, e.g.*, *Harte Gold (Re)*, 2022 ONSC 653 at para. 64 (finding that where shareholders have no economic interest, present or future, it would be unnecessary and, indeed, inappropriate to require a vote of the shareholders to effectuate an action achievable through the court); CBCA, s. 173 and 191(2) (permitting the Canadian court to amend the articles of a corporation that is subject to a reorganization). See also *Arrangement relatif à Blackrock Metals Inc.*, 2022 QCCS 2828 at paras. 119-122.

34. The statutory basis for the RVO and approval of the Atos Sale is found under sections 11 and 36 of the CCAA. Section 11 of the CCAA gives the Canadian Court the

---

23-10983 (Bankr. D. Del. Dec. 11, 2023), Docket No. 155; *In re Just Energy Group Inc., et. al*., No. 21-30823 (MI) (Bankr. S.D. Tex., Dec. 1, 2022), Docket No. 232.

[4] Although the majority of Goli Canada's assets are located in Canada, Goli Canada does own certain assets that are located in the U.S. (including the Atos Equipment).

power to issue any order that is considers appropriate, while section 36 of the CCAA allows for the sale or disposition of assets outside of the ordinary course of business if specified criteria are met, and if notice has been given "to the secured creditors who are likely to be affected by the proposed sale or disposition." CCAA, s. 36(3).  In situations where, as here, shareholders have no economic interest, present or future, it is within the Canadian Court's jurisdiction to approve the cancellation of all outstanding shares and the issuance of new shares to the purchaser.

35. The CCAA allows a debtor to dispose of all or substantially all of its business and assets outside of the ordinary course of business without the formal approval of its creditors, provided it obtains prior authorization from the court.  The CCAA, however, requires that a notice of application to the Canadian court for the approval of the transaction be given by the debtor to all of its secured creditors and other parties who are likely to be affected by the proposed sale or disposition.  In seeking approval from the court, it is common practice that underlying sale agreements are filed under seal pending closing of the transaction to protect sensitive, confidential information.  Still, courts find adequate notice is provided to creditors in an initial application's summary of key terms seeking approval of the underlying sale or vesting order, and the monitor's report filed in support thereof. Here, consistent with these typical protocols, the Initial Order provides that the Subscription Agreement and the Agency Agreement will be filed under seal until further order of the Canadian Court. Initial Order ¶ 56.

36. In deciding whether to authorize an RVO or the sale of assets (*i.e.*, the Atos Equipment), the CCAA stipulates that the Canadian court is to consider, among other things:

    a) whether the process leading to the proposed sale or disposition was reasonable under the circumstances;

    b) whether the monitor has approved the process leading to the proposed sale or disposition;

c) whether the monitor filed with the Canadian court a report stating that in its opinion, the sale or disposition would be more beneficial to the creditors than a sale or disposition under a bankruptcy;

d) the extent to which the creditors were consulted;

e) the effects of the proposed sale or disposition on the creditors and other interested parties; and

f) whether the consideration to be received for the assets is reasonable and fair, taking into account their market value.

37. If the required test is met, the court will normally issue an order authorizing the transfer of the assets on a free and clear basis (other than assumed/permitted encumbrances) or an RVO authorizing the transfer to a residual corporation of all the unwanted assets, undertakings and liabilities and vesting the shares of the debtor to a purchaser on a free and clear basis. The order will also provide that creditor claims will have the same priority against the proceeds of the transaction that they had against the assets or shares, prior to the disposition.

**The Debtors' Requests from the Canadian Court**

38. As described in greater detail in the Verified Petition, on March 15, 2024, the Debtors filed the CCAA Initial Application with the Canadian Court seeking the entry of: (i) the Initial Order; (ii) the RVO, authorizing Goli Canada to enter into the transaction with the Purchaser; and (iii) the Atos Sale Order, approving the Goli Canada's entry into the Agency Agreement, with the intervention of Goli US, and authorizing the sale of the Atos Equipment.

39. As described in the *Petitioner's Motion for Entry of an Order Specifying Form and Manner of Service and Notice*, filed contemporaneously herewith (the "Notice Motion"), the Debtors and/or the Petitioner, in its capacity as monitor, intends to serve all parties entitled to receive notice via their addresses as listed on a notification list maintained and updated by the Monitor with the Initial Order; notice of the Comeback Hearing and the deadlines to object to extension of the Stay Period; a summary of the Sale Transactions, including the date of the CCAA Sale Approval Hearing and the deadlines to oppose approval of the Sale Transactions and

entry of the proposed RVO and the proposed Atos Sale Order; a link to the Petitioner's webpage where various relevant documents, including the proposed RVO and the proposed Atos Sale Order, are posted; and a copy of the Chapter 15 Notice. The Debtors will also make best efforts to serve all other creditors and stakeholders with the Initial Order, notice of the CCAA Initial Application and supporting materials to all creditors with known email addresses. In addition, the Petitioner posted copies of the CCAA Initial Application, the publicly available exhibits thereto, its First Report to the Court and the Initial Order on the Petitioner's webpage at http://www.insolvencies.deloitte.ca/goli, which will be maintained in connection with the Canadian Proceedings and updated to include pleadings filed in both the Canadian Proceedings and these Chapter 15 Cases.

40.  The Canadian Proceedings provide creditors with notice and an opportunity to retain counsel, to appear, to raise objections, and to appeal. All creditors of the Debtors, including creditors located in the U.S., are generally afforded the same protections, and are subject to the same procedures and requirements, in the Canadian Proceedings. Further, all parties in interest, including U.S. creditors, will have an opportunity to appear and be heard with respect to, and object to, the relief requested by the CCAA Initial Application, including entry of the RVO and the Atos Sale Order.

## Conclusion

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

*[Signature Page to Follow]*

Executed on this 19th day of March, 2024.

Montréal, Quebec

_____
Noah Zucker
Norton Rose Fulbright Canada LLP
1 Place Ville-Marie
Montréal, Quebec
Canada
H3B 1R1
Suite 2500