**Exhibit A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
----------------------------------------------------------- x
In re:                                                      :
                                                            :   Chapter 15
GOLI NUTRITION INC., et al.,¹                               :
                                                            :   Case No. 24-10438 (LSS)
                                                            :
                 Debtors in a Foreign Proceeding.           :   (Jointly Administered)
                                                            :
----------------------------------------------------------- x   Ref. No. ___
```

**ORDER (I) RECOGNIZING AND ENFORCING (A) THE RVO AND
(B) THE ATOS SALE ORDER, (II) APPROVING THE SALE OF THE
DEBTORS' INTERESTS AND ASSETS FREE AND CLEAR OF LIENS,
CLAIMS, AND ENCUMBRANCES, AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")² filed by Deloitte Restructuring Inc., in its capacity as the court-appointed monitor and duly authorized foreign representative (in such capacity, the "Petitioner"), as defined by section 101(24) of title 11 of the United States Code (the "Bankruptcy Code"), of Goli Nutrition Inc., a company incorporated in Québec, Canada ("Goli Canada"), and Goli Nutrition Inc., a company incorporated in Delaware ("Goli US," and, together with Goli Canada, the "Debtors"), pursuant to sections 105(a), 363, 365, 1501, 1507, 1520, 1521, 1525, and 1527 of the Bankruptcy Code, for entry of an order (this "Order"): (a) recognizing and enforcing (i) the RVO, attached hereto as **Exhibit 1** and (ii) the Atos Sale Order, attached hereto as **Exhibit 2**; (b) approving, under section 363 of the Bankruptcy Code, the sale of the Subscribed Shares to the Purchaser, free and clear of all liens, claims, encumbrances, and other interests (other than the Permitted Encumbrances and Retained Liabilities, as defined in the RVO) in accordance with the RVO; (c) approving, under section 363 of the Bankruptcy Code, the sale of the Atos

---

[1]    The Debtors in these Chapter 15 cases, are: Goli Nutrition, Inc., a company incorporated in Québec, Canada and the last 4 digits of its Canadian business number is 0002; and Goli Nutrition Inc., a company incorporated in Delaware and the last 4 digits of its federal tax identification number is 2655. The Debtors are collectively managed from their corporate headquarters which are located at 2205 Boul. De la Côte-Vertu, suite 200, Montreal, Québec, Canada.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Equipment by the Agent free and clear of all liens, claims, encumbrances, and other interests in accordance with the Agency Agreement; and (d) granting such other relief as the Court deems just and proper, all as more fully set forth in the Motion; and upon consideration of the Verified Petition and the Zucker Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 109 and 1501; and venue being proper before this Court pursuant to § 1410; and the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and that this Court may enter a final order consistent with Article III of the United States Constitution; and adequate and sufficient notice of the filing of the Motion having been given by the Petitioner; and it appearing that the relief requested in the Motion is necessary and beneficial to the Debtors and the Petitioner; and, if deemed necessary, this Court having held a hearing (the "Hearing") to consider the relief requested in the Motion; and there being no objections or other responses filed that have not been overruled, withdrawn, or otherwise resolved; and after due deliberation and sufficient cause appearing therefore,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

A.      This Court entered the Recognition Order [Docket No. ____] on March __, 2024, and has found that the Debtors have satisfied the requirements of, among others, sections 101(23) and (24), 1502(4), 1504, 1509, 1515, 1517, 1520, 1521, and 1522 of the Bankruptcy Code.  All such findings by this Court are hereby incorporated by reference herein and such Recognition Order shall continue in effect in all respects except to the extent this Order directly modifies or directly contradicts such Recognition Order.

B.      On March __ 2024, the Canadian Court entered the RVO, approving, among other things, the RVO transaction and all related documents and adding Residual Co. as an applicant in the CCAA proceedings and removing Goli Canada as an applicant in the CCAA Proceedings;

ordering Goli Canada to issue the Subscribed Shares, and vesting in the Purchaser all right, title and interest in and to the Subscribed Shares, free and clear of any encumbrances; ordering Goli Canada to redeem and cancel the Legacy Equity Interests (as defined in the RVO) without any payment or other consideration; and approving the Pre-Closing Reorganization (as defined in the RVO) and vesting out of Goli Canada certain excluded assets, contracts and liabilities and discharging all encumbrances against Goli Canada other than certain permitted encumbrances..

C.       On March __ 2024, the Canadian Court entered the Atos Sale Order, approving, among other things, the Debtors' entry into the Agency Agreement for the sale of the Atos Equipment in accordance therewith.

D.       Based on the affidavits of service filed with, and the representations made to, this Court: (i) notice of the Motion, the Hearing, if necessary, and the CCAA Vesting Orders was proper, timely, adequate, and sufficient under the circumstances of these Chapter 15 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; and (ii) no other or further notice of the Motion, the CCAA Vesting Orders, or the entry of this Order is necessary or shall be required.

E.       This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

F.       The relief granted herein is necessary and appropriate, is in the interest of the public, promotes international comity, is consistent with the public policies of the United States, is warranted pursuant to sections 105(a), 363(b), (f), (m) and (n), 364, 365, 1501, 1507, 1520, 1521, 1525, and 1527 of the Bankruptcy Code, and will not cause any hardship to any parties in interest that is not outweighed by the benefits of the relief granted.

G.     Based on the information contained in the Motion, the Petition, the Zucker Declaration and the record made at the Hearing, if necessary, the Debtors, with the consent of and in consultation with the Lenders, conducted an extensive marketing and sales process prior to the commencement of the CCAA Proceedings with respect to the Debtors' business and their assets, including the Atos Equipment, and such process was non-collusive, duly noticed, and provided a reasonable opportunity for potential buyers to make any offer.  The Petitioner, the Debtors and the Lenders, whose collateral is the subject to the sale transactions, support the disposition of (i) the Subscribed Shares pursuant to the Subscription Agreement in connection with the RVO transaction, and (ii) the Atos Equipment pursuant to the Agency Agreement and the liquidation process that will be conducted by the Agent thereunder.  As such, it is appropriate that the Subscribed Shares be issued to the Purchaser on the terms and subject to the conditions set forth in the Subscription Agreement and that the Atos Equipment be sold on the terms and subject to the conditions set forth in the Agency Agreement.

H.     Based on information contained in the Motion, the Verified Petition, the Zucker Declaration, and the record made at the Hearing, if necessary, the relief granted herein relates to assets and interests that, under the laws of the United States, should be administered in the Canadian Proceedings.

I.     The Debtors' performance under the Subscription Agreement and the Agency Agreement and related agreements: (i) constitute a sound and reasonable exercise of the Debtors' business judgment; (ii) provide value and are beneficial to the Debtors and are in the best interests of the Debtors; their estates, and their stakeholders; and (iii) are reasonable and appropriate under the circumstances.  The consideration provided by the Purchaser for the Subscribed Shares under the Subscription Agreement, and the consideration to be provided by the Purchaser of the Atos

Equipment to be sold in accordance with the Agency Agreement, was the highest and best offer providing a greater recovery than any alternative and constitute fair consideration and reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, Uniform Avoidance Transaction Act, and other laws of the United States, any state, territory, possession thereof, or the District of Columbia.

J.     The transactions implemented pursuant to the Subscription Agreement do not amount to a consolidation, merger, or *de facto* merger of the Purchaser with any of the Debtors. Likewise, the transactions implemented pursuant to the Agency Agreement do not amount to a consolidation, merger, or *de facto* merger of the Agent and/or any subsequent purchaser of the Atos Equipment with any of the Debtors.

K.     Time is of the essence in consummating the transactions implemented pursuant to the Subscription Agreement and the Agency Agreement.  To maximize the value of the Subscribed Shares and the Atos Equipment, it is essential that the pertinent transactions occur and be recognized and enforced in the United States promptly.  The Petitioner, on behalf of the Debtors, has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of such transactions.  Accordingly, there is cause to waive the stay that would otherwise be applicable under Bankruptcy Rule 6004(h), and accordingly, the transactions contemplated by the Subscription Agreement and Agency Agreement and related agreements can be closed as soon as reasonably practicable upon entry of this Order.

L.     Based upon the information contained in the Motion, the Verified Petition, the Zucker Declaration, the other pleadings filed in these chapter 15 cases, and the record made at any hearing on the Motion, if necessary, the Subscription Agreement and Agency Agreement and each

of the transactions contemplated thereby were negotiated, proposed, and entered into by the Debtors and the Purchaser and the Agent, as applicable, in good faith, without collusion, and from arm's-length bargaining positions.  The Purchaser is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.  None of the Debtors, the Petitioner, the Purchaser, or the Agent has engaged in any conduct that would cause or permit the Subscription Agreement or the Agency Agreement, as applicable, or the consummation of the transactions contemplated thereby to be avoided or costs and damages to be imposed, including under section 363(n) of the Bankruptcy Code.

M.    The Agent is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or controlling stockholders exists between the Agent and the Debtors.

N.    The Sale Procedures (as defined in the Agency Agreement) are reasonable and will maximize the returns on the Atos Equipment for the benefit of the Debtors and their creditors.

O.    The Subscription Agreement and Agency Agreement were not entered into for the purpose of hindering, delaying, or defrauding any present or future creditors of the Debtors.

P.    The Debtors may sell and transfer the Subscribed Shares and the Atos Equipment free and clear of all liens, claims (as defined in section 101(5) of the Bankruptcy Code), rights, liabilities, encumbrances, and other interests of any kind or nature whatsoever (including rights of setoff and recoupment) against the Debtors, the Subscribed Shares, the Atos Equipment, other than the Permitted Encumbrances and Retained Liabilities (as defined in the RVO and the Atos Sale Order, as applicable), because with respect to each creditor asserting any liens, claims, encumbrances, and other interests, one or more of the standards set forth in section 363(f)(l)–(5) of the Bankruptcy Code has been satisfied.  Each creditor that did not object to the Motion is

deemed to have consented to the sale of the Subscribed Shares and the Atos Equipment free and clear of all liens, claims, encumbrances, and other interests (other than the Permitted Encumbrances and Retained Liabilities, each as defined in the RVO and the Atos Sale Order, as applicable) pursuant to section 363(f)(2) of the Bankruptcy Code.

Q.      The total consideration to be provided under the Subscription Agreement reflects the reliance of the Purchaser on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Subscribed Shares, free and clear of all liens, claims, encumbrances, and other interests, other than the Permitted Encumbrances and Retained Liabilities (as defined in the RVO).  Likewise, the total consideration to be provided under the Agency Agreement reflects the reliance of the Agent on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with authority to possess and sell the Atos Equipment, free and clear of all liens, claims, encumbrances, and other interests.

R.      The sale of the Subscribed Shares to the Purchaser will be a legal, valid, and effective sale of the Subscribed Shares, and will vest the Purchaser with all rights, title, and interests in and to the Subscribed Shares, free and clear of all liens, claims, encumbrances, and other interests, other than the Permitted Encumbrances and Retained Liabilities (as defined in the RVO).

S.      The sale of the Atos Equipment in accordance with the Agency Agreement will be a legal, valid, and effective sale of the Atos Equipment, and will vest any purchaser with all rights, title, and interests in and to the Atos Equipment, free and clear of all liens, claims, encumbrances, and other interests.

T.      The Petitioner and the Debtors, as appropriate: (i) have full power and authority to execute the Subscription Agreement and the Agency Agreement and all other documents

contemplated thereby; (ii) have all the power and authority necessary to consummate the transactions contemplated by the Subscription Agreement and the Agency Agreement; and (iii) upon entry of this Order, other than any consents identified in the Subscription Agreement and the Agency Agreement, need no consent or approval from any other person or governmental unit to consummate the transactions contemplated thereby. Such transactions have been duly and validly authorized by all necessary corporate action of the Debtors.

U.    The Subscription Agreement is a valid and binding contract between the Debtors and the Purchaser and shall be enforceable pursuant to its terms. The Subscription Agreement, the transactions contemplated thereby, and the consummation thereof shall be specifically enforceable against and binding upon the Debtors and the Petitioner in these chapter 15 cases and shall not be subject to rejection or avoidance by the foregoing parties or any other Person (as defined in section 101(41) of the Bankruptcy Code).

V.    The Agency Agreement is a valid and binding contract between the Debtors and the Agent and shall be enforceable pursuant to its terms. The Agency Agreement, the transactions contemplated thereby, and the consummation thereof shall be specifically enforceable against and binding upon the Debtors and the Petitioner in these chapter 15 cases and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.

W.    The security interests and liens provided for in the Agency Agreement to secure the obligations of the Debtors under the Agency Agreement to the Agent are necessary to induce the Agent to agree to the terms of the Agency Agreement. But for the protections afforded to the Agent under the Bankruptcy Code, this Order, and the Agency Agreement, the Agent would not have agreed to pay the Debtors the compensation provided for under the Agency Agreement.

X.      The Purchaser would not have entered into the Subscription Agreement and would not consummate the purchase of the Subscribed Shares and the related transactions, thus adversely affecting the Debtors, their estates, and their creditors, and other parties in interest, if the sale of the Subscribed Shares to the Purchaser was not free and clear of all liens, claims, encumbrances, and other interests (other than the Permitted Encumbrances and Retained Liabilities as defined in the RVO), or if the Purchaser would, or in the future could, be liable on account of any such lien, claim, encumbrance, or any other interest, including, as applicable, certain liabilities related to the Subscribed Shares that will not be assumed by the Purchaser, as described in the Subscription Agreement.

Y.      The Agent would not have entered into the Agency Agreement and agree to undertake the liquidation of the Atos Equipment, thus adversely affecting the Debtors, their estates, and their creditors, and other parties in interest, if it, on behalf of the Debtors, was not permitted to sell and transfer the Atos Equipment, free and clear of all liens, claims, encumbrances, and other interests, or if the Agent would, or in the future could, be liable on account of any such lien, claim, encumbrance, or any other interest, including, as applicable, certain liabilities related to the Atos Equipment that will not be assumed, as described in the Agency Agreement.

Z.      A sale of the Subscribed Shares and the Atos Equipment other than free and clear of all liens, claims, encumbrances, and other interests (other than the Permitted Encumbrances or Retained Liabilities as defined in the RVO) would yield substantially less value than the sale of the Subscribed Shares pursuant to the Subscription Agreement or the Atos Equipment pursuant to the Agency Agreement, respectively; thus, the sale free and clear of all liens, claims, encumbrances, and other interests (other than the Permitted Encumbrances and Retained

Liabilities as defined in the RVO), in addition to all of the relief provided herein, is in the best interests of the Debtors, their creditors, and other parties in interest.

AA.    The interests of the Debtors' creditors in the United States are sufficiently protected.  The relief granted herein is necessary and appropriate, in the interests of the public and international comity, consistent with the public policies of the United States, and warranted pursuant to sections 1521(b) and 1522 of the Bankruptcy Code.

BB.    The legal and factual bases set forth in the Motion and at the Hearing, if necessary, establish just cause for the relief granted herein.

CC.    Any and all findings of fact and conclusions of law announced by this Court at the Hearing are incorporated herein.

**BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED THAT**:

1.    The Motion is granted as set forth herein.

2.    All objections, if any, to the Motion or the relief requested therein that have not been withdrawn, waived, or settled by stipulation filed with this Court, and all reservations of rights included therein, are hereby overruled on the merits.

### Recognition and Enforcement of the RVO

3.    The RVO, a copy of which is annexed hereto as **Exhibit 1**, and all of its respective terms, including any immaterial or administrative amendments thereto, including those necessary to give effect to the substance of such order, either pursuant to the terms therein or as approved by the Canadian Court, are fully recognized and given full force and effect in the United States in their entirety.

4.    The Subscription Agreement and the transactions contemplated thereunder, including, for the avoidance of doubt, the sale of the Subscribed Shares and the transfers of the

Subscribed Shares on the terms set forth in the Subscription Agreement and the RVO, including all transactions contemplated thereunder, this Order, including all transactions contemplated hereunder, and all of the terms and conditions of each of the foregoing are hereby approved and authorized pursuant to sections 105, 363, 365, 1501, 1520, 1521, 1525 and 1527 of the Bankruptcy Code. The failure specifically to include any particular provision of the Subscription Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Subscription Agreement and the transactions contemplated thereunder, be authorized and approved in their entirety.

5.      Pursuant to sections 105, 363, 365, 1501, 1520, 1521, 1525, and 1527 of the Bankruptcy Code, the RVO and this Order, the Debtors, the Purchaser, and the Petitioner (as well as their respective officers, employees, and agents) are authorized to take any and all actions necessary or appropriate to: (a) consummate the transactions contemplated by the Subscription Agreement, including the sale of the Subscribed Shares to the Purchaser, in accordance with the Subscription Agreement, the RVO, and this Order; (b) distribute proceeds of the Subscription Agreement in accordance with and as authorized therein; and (c) perform, consummate, implement, and close fully the transactions contemplated by the Subscription Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Subscription Agreement and the transactions contemplated thereunder and to take such additional steps and all further actions as may be necessary or appropriate to the performance of the obligations contemplated by the Subscription Agreement, all without further order of the Court, and are hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases, and other documents on behalf of such Person with respect to the Subscribed Shares that are necessary or appropriate to effectuate the Subscription Agreement and the

transactions contemplated thereunder, any related agreements, the RVO, and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors or the Purchaser may determine are necessary or appropriate, and are hereby authorized and empowered to cause to be filed, registered, or otherwise recorded a certified copy of the RVO, this Order or the Subscription Agreement, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, encumbrances, and other interests against the Subscribed Shares.  The RVO and this Order are deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

### Transfer of the Subscribed Shares Free and Clear [3]

6. Pursuant to sections 105(a), 363, 365, 1501, 1520, 1521, 1525, and 1527 of the Bankruptcy Code, on the Closing Date, the Subscribed Shares shall be transferred and absolutely vest in the Purchaser, in accordance with RVO and the Subscription Agreement, without further instrument of transfer or assignment, and such transfer shall: (a) be a legal, valid, binding, and effective transfer of the Subscribed Shares to the Purchaser; (b) vest the Purchaser with all rights, title, and interests in the Subscribed Shares; and (c) be free and clear of all liens, claims, encumbrances, and other interests, other than the Permitted Encumbrances and Retained Liabilities (as defined in the RVO).

---

[3] Capitalized terms used in this section but not defined elsewhere in this Order shall have the meanings ascribed to such terms in the RVO.

7.      Pursuant to sections 105(a), 363(f), 365, 1501, 1520, 1521, 1525 and 1527 of the Bankruptcy Code, upon the closing of the transaction contemplated by the Subscription Agreement except with respect to solely Permitted Encumbrances and Retained Liabilities (as defined in the RVO): (a) no holder of a lien, claim, encumbrance, or other interest against or in the Debtors and/or their assets shall interfere, and each and every such holder is enjoined from interfering with the Purchaser's rights and title to or use and enjoyment of the Subscribed Shares; and (b) the sale of the Subscribed Shares, the Subscription Agreement, and any instruments contemplated thereby shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any successor thereof.  All Persons holding a lien, claim, encumbrance, or other interest against or in the Debtors and/or their assets are forever barred and enjoined from asserting such lien, claim, encumbrance, or other interest against the Subscribed Shares, the Purchaser, or any of its members, and their respective affiliates and their respective officers, directors, employees, managers, partners, members, financial advisors, attorneys, agents, and representatives, successors, and assigns from and after closing of the transactions contemplated by the Subscription Agreement.

8.      Each and every federal, state, and local governmental agency or department is authorized and directed to accept (and not impose any fee, charge, or tax in connection therewith) any and all documents and instruments necessary or appropriate to consummate the sale of the Subscribed Shares to the Purchaser.  Effective as of the Closing Date, the RVO and this Order shall constitute for any and all purposes a full and complete conveyance and transfer of the Subscribed Shares to the Purchaser free and clear of all liens, claims, encumbrances, and other interests, other than the Permitted Encumbrances and Retained Liabilities (as defined in the RVO).

9.      This Order shall be effective as a determination that, as of the Closing Date, (a) all liens, claims, encumbrances, and other interests against or in the Debtors and/or their assets, other than the Permitted Encumbrances and Retained Liabilities (as defined in the RVO) have been unconditionally released, discharged, and terminated as to the Purchaser and the Subscribed Shares, and that the conveyances and transfers described herein have been effected, (b) no creditors of Residual Co. shall have any claim upon, cause of action against, or interest in, the Subscribed Shares or the Purchaser (as to the Purchaser, solely in connection with or with respect to the Debtors) as of the Closing Date, and (c) such Order is and shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease.  Each of the foregoing Persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Subscription Agreement and effect the discharge of all liens, claims, encumbrances, and other interests, other than the Permitted Encumbrances (as defined in the RVO) pursuant to this Order and the RVO, and not impose any fee, charge, or tax in connection therewith.

10.     The Purchaser shall not be deemed to: (a) be a legal successor, or otherwise be deemed a successor, to any of the Debtors; (b) have, *de facto* or otherwise, merged with or into any or all Debtors; or (c) be a mere continuation or substantial continuation of any or all Debtors or the enterprise or operations of any or all Debtors.  Without limiting the generality of the

foregoing, except as otherwise provided in the Subscription Agreement, the RVO, this Order, and/or any other order of the Canadian Court, the conveyance of the Debtors' rights, title, and interest in the Purchased Assets to the Purchaser under the Subscription Agreement shall not result in the Purchaser having any liability or responsibility whatsoever for any: (a) interest, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly; (b) obligation under any of the Debtors' labor or employment agreements; (c) of the Debtors' mortgages, deeds of trust, and security interests; (d) intercompany loans and receivables between the Debtors and any non-debtor subsidiary or affiliate; (e) of the Debtors' pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs; (f) of the Debtors' other employee, workers' compensation, occupational disease, unemployment, or temporary disability related claims, including, without limitation, claims that might arise under or pursuant to: (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Act of 1988; (vii) the Age Discrimination and Employee Act of 1976 and the Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990; (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination laws, (xi) state unemployment compensation laws or any other similar state laws, (xii) or any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors; or (g) successor or vicarious liabilities of any kind or character, including, but not limited to, federal, state, or other tax liabilities, U.S. or foreign pension liabilities, or liabilities based on any theory of antitrust, environmental, labor law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, de facto merger or substantial continuity, whether known or unknown, whether legal

or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these Chapter 15 Cases, whether imposed by agreement, understanding, law, equity, or otherwise with respect to any of the Debtors or any obligations of the Debtors, including, but not limited to, in the case of liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the time of Closing or any taxes in connection with, or in any way relating to the cancellation of debt of the Debtors or their affiliates.

11.     The transaction contemplated by the Subscription Agreement, including the purchase of the Subscribed Shares, is undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorizations provided herein shall neither affect the validity of the Subscription Agreement nor the transfer of the Subscribed Shares to the Purchaser free and clear of all liens, claims, encumbrances, and other interests, unless such authorization is duly stayed before the closing of the transactions contemplated by the Subscription Agreement pending such appeal.

12.     None of the Debtors or the Purchaser, has engaged in any conduct that would cause or permit the Subscription Agreement or the Agency Agreement, as applicable, to be avoided or costs and damages to be imposed, including under section 363(n) of the Bankruptcy Code.

13.     The terms and provisions of the Subscription Agreement, the RVO, and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, the Purchaser, the Petitioner, the Debtors' creditors, and all other parties in interest, and any successors of the Debtors, the Purchaser, the Petitioner, and the Debtors' creditors, including any foreign representative(s) of the Debtors, trustee(s), examiner(s), or receiver(s) appointed in any

proceeding, including, without limitation, any proceeding under any chapter of the Bankruptcy Code, the CCAA, or any other law, and all such terms and provisions shall likewise be binding on such foreign representative(s), trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Debtors, their creditors, or any trustee(s), examiner(s), or receiver(s).

14.     Subject to the terms and conditions of the RVO, the Subscription Agreement and any related agreements, documents, or other instruments, may be modified, amended, or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of this Court; *provided* that any such modification, amendment, or supplement does not materially change the terms of such agreements, documents, or other instruments and is otherwise in accordance with the terms of the RVO.

15.     Paragraphs 6–15 of this Order and the Subscription Agreement are non-severable and mutually dependent.  To the extent that there are any inconsistencies between the terms of this Order and the RVO, on the one hand, and the Subscription Agreement, on the other, this Order and the RVO shall govern.

### Recognition and Enforcement of the Atos Sale Order

16.     The Atos Sale Order and all of its respective terms, including any immaterial or administrative amendments thereto, including those necessary to give effect to the substance of such order, either pursuant to the terms therein or as approved by the Canadian Court, are fully recognized and given full force and effect in the United States in their entirety.

17.     The Agency Agreement and the transactions contemplated thereunder, including, for the avoidance of doubt, the sale of the Atos Equipment and the transfer of the Atos Equipment, on the terms set forth in the Agency Agreement and the Atos Sale Order, including all transactions contemplated thereunder, this Order, including all transactions contemplated hereunder, and all of the terms and conditions of each of the foregoing are hereby approved and authorized pursuant to

sections 105, 363, 364, 365, 1501, 1520, 1521, 1525 and 1527 of the Bankruptcy Code. The failure specifically to include any particular provision of the Agency Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agency Agreement and the transactions contemplated thereunder, be authorized and approved in their entirety.

18.     Pursuant to sections 105, 363, 364, 365, 1501, 1520, 1521, 1525, and 1527 of the Bankruptcy Code, the Atos Sale Order, and this Order, the Agent, the Debtors, and the Petitioner (as well as their respective officers, employees, and agents) are authorized to take any and all actions necessary or appropriate to: (a) consummate the transactions contemplated by the Agency Agreement, including the sale of the Atos Equipment in accordance with the Agency Agreement, the Atos Sale Order, and this Order; and (b) perform, consummate, implement, and close fully the transactions contemplated by the Agency Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agency Agreement and the transactions contemplated thereunder and to take such additional steps and all further actions as may be necessary or appropriate to the performance of the obligations contemplated by the Agency Agreement, all without further order of the Court, and are hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases, and other documents on behalf of such Person with respect to the Atos Equipment that are necessary or appropriate to effectuate the Agency Agreement and the transactions contemplated thereunder, any related agreements, the Atos Sale Order, and this Order.

**Transfer of the Atos Equipment Free and Clear** [4]

19.     Upon the closing of the transactions contemplated by the Agency Agreement, the sale of the Atos Equipment by the Agent to a purchaser pursuant to the terms of the Agency Agreement and the Atos Sale Order shall: (a) be a legal, valid, binding and effective transfer of the Atos Equipment to such purchaser; (b) vest the purchaser with all rights, title, and interests in the Atos Equipment; and (c) be free and clear of all liens, claims, encumbrances, and other interests.  All Persons holding a lien, claim, encumbrance, or other interest against or in the Debtors and/or their assets are forever barred and enjoined from asserting such lien, claim, encumbrance, or other interest against the Atos Equipment, the Agent (or any subsequent purchaser of the Atos Equipment pursuant to the Agency Agreement), or any of its members, and their respective affiliates and their respective officers, directors, employees, managers, partners, members, financial advisors, attorneys, agents, and representatives, successors, and assigns from and after closing of the transactions contemplated by the Agency Agreement.

20.     The Sale Procedures are approved in their entirety.

21.     None of the Debtors, the Petitioner, or the Agent, nor any of their respective officers, employees, or agents shall be required to obtain the approval of any third parties, including without limitation, any Governmental Unit or any landlord, to conduct any Sale in accordance with the Agency Agreement and this Order.

22.     Any Sale shall be conducted by the Agent notwithstanding any restrictive provision of any lease or other agreement relative to occupancy affecting or purporting to restrict such Sale. No person or entity, shall take any action to directly or indirectly prevent, interfere with, or

---

[4]     Capitalized terms used in this section but not defined elsewhere in this Order shall have the meanings ascribed to such terms in the Atos Sale Order.

otherwise hinder any Sale or seeks to recover damages for breaches of covenants or provisions in any lease based upon any relief authorized herein.

23.    Each and every federal, state, and local governmental agency or department is authorized and directed to accept (and not impose any fee, charge, or tax in connection therewith) any and all documents and instruments necessary or appropriate to consummate the sale of the Atos Equipment.

24.    In accordance with the Atos Sale Order and effective upon the payment of the Guaranteed Minimum (as defined in the Agency Agreement), as security for all obligations of Goli Canada to the Agent under or in connection with the Agency Agreement, the Agent is granted a first priority security lien in the Atos Equipment and all proceeds thereof including all proceeds from sales of the Atos Equipment in accordance with the Agency Agreement.  Without any further act by or on behalf of the Agent or any other party, the Agent's security interest in and liens upon the Atos Equipment and all Gross Proceeds (as defined in the Agency Agreement) are (i) validly created, (ii) effective upon the entry of this Order, and (iii) senior to all other liens, charges, and security interests in the Atos Equipment and all Gross Proceeds.

25.    This Order shall be effective as a determination that, as of the closing of the transactions contemplated by the Agency Agreement, (a) all liens, claims, encumbrances, and other interests against or in the Atos Equipment have been unconditionally released, discharged, and terminated as to the Atos Equipment, and that the conveyances and transfers described herein have been effected, (b) no creditors of Residual Co. shall have any claim upon, cause of action against, or interest in, the Atos Equipment, and (c) such Order is and shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative

agencies, governmental departments, secretaries of state, federal and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease.  Each of the foregoing Persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agency Agreement and effect the discharge of all liens, claims, encumbrances, and other interests, pursuant to this Order and the Atos Sale Order, and not impose any fee, charge, or tax in connection therewith.

26.     The Agent shall not be deemed to: (a) be a legal successor, or otherwise be deemed a successor, to any of the Debtors; (b) have, *de facto* or otherwise, merged with or into any or all Debtors; or (c) be a mere continuation or substantial continuation of any or all Debtors or the enterprise or operations of any or all Debtors.

27.     All Persons that are currently in possession of some or all of the Atos Equipment located in the United States or that are otherwise subject to the jurisdiction of this Court are hereby directed to surrender possession of such Atos Equipment to the Debtors or the Agent.

28.     None of the Debtors nor the Agent has engaged in any conduct that would cause or permit the Agency Agreement, as applicable, to be avoided or costs and damages to be imposed, including under section 363(n) of the Bankruptcy Code.

29.     The terms and provisions of the Agency Agreement, the Atos Sale Order, and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, the Agent, the Petitioner, the Debtors' creditors, and all other parties in interest, and any successors of the Debtors, the Agent, the Petitioner, and the Debtors' creditors, including any foreign representative(s) of the Debtors, trustee(s), examiner(s), or receiver(s) appointed in any

proceeding, including, without limitation, any proceeding under any chapter of the Bankruptcy Code, the CCAA, or any other law, and all such terms and provisions shall likewise be binding on such foreign representative(s), trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance by the Debtors, their creditors, or any trustee(s), examiner(s), or receiver(s).

30.    Subject to the terms and conditions of the Atos Sale Order, the Agency Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by each party, and in accordance with the terms thereof, without further order of this Court; *provided* that any such modification, amendment, or supplement does not materially change the terms of such agreements, documents, or other instruments and is otherwise in accordance with the terms of the Atos Sale Order.

31.    Paragraphs 19–31 of this Order and the Agency Agreement, are non-severable and mutually dependent.  To the extent that there are any inconsistencies between the terms of this Order and the Atos Sale Order, on the one hand, and the Agency Agreement, on the other, this Order and the Atos Sale Order shall govern.

### Releases

32.    The releases, exculpation, and injunctive provisions set forth in the CCAA Vesting Orders are expressly recognized by this Court and given full force and effect in the United States. For the avoidance of doubt, nothing herein shall release, exculpate, or enjoin any claims arising out of fraud, bad faith or illegal acts.

33.    The releases in favor of: (i) Goli Canada and certain of its directors and officers; and (ii) the Purchaser and its present and former directors, officers, employees, shareholders, legal counsel and advisors (collectively the "Released Parties") contained in the RVO are expressly recognized by this Court and given full force and effect in the United States.  Consistent with the RVO, the Released Parties shall be deemed released and discharged from liability arising from any

and all present and future claims against the Released Parties based upon any fact or matter of occurrence related to the Principal Transaction or the Debtors, their assets, business or affairs or administration of the Debtors; provided that, nothing in this paragraph shall waive, discharge, release, cancel or bar (a) any claim that is not permitted to be released pursuant to the CCAA; (b) any claims arising out of fraud, bad faith or illegal acts against the directors or officers of Goli Canada that: (i) relates to contractual rights of one or more creditors; or (ii) is based on allegations of misrepresentations made by directors to creditors or of wrongful or oppressive conduct by directors; or (c) any obligations of any of the Released Parties under or in connection with the Subscription Agreement, the closing documents, and/or the consummation of the Principal Transaction.

34.     In addition, the indemnification provisions and limitations of liability in favor of the Agent in connection with its performance under the Agency Agreement are expressly recognized by this Court and given full force and effect in the United States.

35.     Any legal, factual, equitable, or other defenses (including, but not limited to, waiver, release, estoppel, or res judicata) held by any current or former officer or director of the Debtors in connection with any claim held by, asserted, or asserted in the future by any person relating in any manner to such current or former officer or director's role, position, conduct, acts, or omissions as an officer or director of any Debtor are hereby preserved and shall not be limited, waived, released, modified, or affected whatsoever by the entry of this Order.  Without limiting the foregoing, the rights of any current or former officer or director of any of the Debtors to (a) raise or assert that the releases, exculpation, and/or injunctive provisions contained in the CCAA Vesting Orders entered in the Canadian Proceedings are applicable to them and are fully enforceable as a defense in any action brought in any court, tribunal, or forum within the United

States, and (b) seek recognition of the releases, exculpation, and injunctions contained in the CCAA Vesting Orders under the comity doctrine or any other similar cross-border cooperation doctrine or treaty are fully preserved and retained in full.

36.     Pursuant to the terms of the RVO, and without limiting any other protections afforded to the Monitor under the RVO and/or CCAA, the Monitor "shall incur no liability whatsoever as a result of acting in accordance with the RVO and the Subscription Agreement approved herein, other than any liability arising directly out of the gross negligence or wilful misconduct of the Monitor; and no action lies against the Monitor by reason of the RVO or the performance of any act authorized by the RVO, except by leave of the Canadian Court on ten (10) days notice to the Monitor and its counsel."

## Additional Provisions

37.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the Debtors' operations on account of the filing or pendency of these Chapter 15 Cases or the consummation of the Sale.

38.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

39.     Notwithstanding anything to the contrary in this Order, the CCAA Vesting Orders, or any other document, this Court shall retain exclusive jurisdiction to hear and determine all disputes which are in any forum or court within the territorial United States involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the RVO, the Atos Sale Order, or recognized by this Order.

40.     Nothing in this Order shall be deemed to waive, release, extinguish, or estop the Debtors or the Petitioner from asserting, or otherwise impair or diminish, any right (including,

without limitation, any right of recoupment), claim, cause of action, defense, offset, or counterclaim in respect of any asset or interest that is not a Subscribed Share or Atos Equipment.

41.     All Persons subject to the jurisdiction of the United States are permanently enjoined and restrained from taking any actions inconsistent with, or interfering with, the enforcement and implementation of the CCAA Vesting Orders or any documents incorporated by the foregoing.

42.     The Petitioner is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion and the RVO and/or Atos Sale Order, as applicable.

43.     Upon the closing of the Principal Transaction, as evidenced by the Monitor filing a copy of the Monitor's certificate in the form attached to the RVO with this Court, and without further order of the Court, Goli Canada shall be removed as a debtor and Residual Co. shall be added as a debtor in the Chapter 15 Cases, and the caption shall be amended as follows:

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| ---------------------------------------------------------- x | |
|---|---|
| In re                                                     : | |
|                                                             | Chapter 15 |
| RESIDUAL CO., *et al.*,[1]                                  : | Case No. 24-_____ (___) |
| Debtors in a Foreign Proceeding.                          : | Joint Administration Requested |
| ---------------------------------------------------------- x | |

44.     Notwithstanding any provisions in the Bankruptcy Rules to the contrary, including but limited to Rules 6004(h) and 6006(d), the terms and conditions of this Order shall be

---

[1]     The Debtors in these Chapter 15 cases, are: Residual Co., a company incorporated in Québec, Canada and the last 4 digits of its Canadian business number is ____; and Goli Nutrition Inc., a company incorporated in Delaware and the last 4 digits of its federal tax identification number is 2655. The Debtors are collectively managed from their corporate headquarters which are located at 2205 Boul. De la Côte-Vertu, suite 200, Montreal, Québec, Canada.

immediately effective and enforceable upon its entry and the Debtors, the Purchaser, and Gordon Brothers are authorized, each in its discretion, to close the transactions contemplated by the Subscription Agreement and the Agency Agreement, respectively, immediately upon entry of this Order.

45.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order, the CCAA RVO and the Atos Sale Order in the United States.

Dated: _____, 2024       _____
Wilmington, Delaware        UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**RVO**

**(to be supplemented)**

**<u>Exhibit 2</u>**

**Atos Sale Order**

**(to be supplemented)**