# **<u>EXHIBIT A</u>**

# SUPERIOR COURT

(Commercial Division)

CANADA
PROVINCE OF QUEBEC
DISTRICT OF MONTRÉAL

No.: <u>500-11-063787-242</u>

DATE: April 17, 2024

___

**BY  THE HONOURABLE  MARTIN F. SHEEHAN, J.S.C.**

___

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED:

**GOLI NUTRITION INC.**
and
**GOLI NUTRITION INC.**
      Applicants
and
**DELOITTE RESTRUCTURING INC.**
      Monitor

___

<u>RECTIFIED</u> APPROVAL AND REVERSE VESTING ORDER
___

[1]  **WHEREAS** the undersigned rendered a written judgment on April 9, 2024;

[2] **WHEREAS** the file number on the judgment submitted by the parties contained an error;

[3] **WHEREAS** it is appropriate to rectify the file number on the judgment;

**FOR THESE REASONS, THE COURT:**

[4] **MODIFIES** the file number on the judgment;

JS1699

*WHEREFORE THE COURT:*

[7]     **GRANTS** *the Amended Application.*

[8]     **ORDERS** *that, unless otherwise indicated or defined herein, capitalized terms used in this Order shall have the meanings given to them in the Subscription Agreement.*

## SERVICE

[9]     **ORDERS** *that any prior delay for the presentation of this Amended Application is hereby abridged and validated so that the Amended Application is properly returnable today and hereby dispenses with further service thereof.*

[10]    **PERMITS** *service of this Order at any time and place and by any means whatsoever.*

## SUBSCRIPTION AGREEMENT

[11]    **AUTHORIZES** *and* **APPROVES** *the Transactions and entering into and execution by the Vendor of the Subscription Agreement and completion of all the Transactions by the Vendor and Residual Co., with such alterations, changes, amendments, deletions or additions thereto, as may be agreed to with the consent of the Monitor.*

## APPROVAL OF TRANSACTIONS

[12]    **AUTHORIZES** *the Applicants, Residual Co., the Purchaser, and the Monitor, as the case may be, to perform all acts, sign all documents and take any necessary action to execute any agreement, contract, deed, provision, transaction or undertaking stipulated in the Subscription Agreement with such alterations, changes, amendments, deletions or additions thereto, as may be agreed to with the consent of the Monitor and any other ancillary document which could be required or useful to give full and complete effect thereto and to implement the Transactions.*

[13]    **AUTHORIZES** *and* **DIRECTS** *the Applicants, Residual Co., and any other successors of the Vendor to implement the Transactions contemplated in the Subscription Agreement (including the Pre-Closing Reorganization contemplated in the Steps Memo), including to:*

500-11-063787-242 PAGE: 3

*13.1.1. execute and deliver any documents and assurances governing or giving effect to the Transactions as the Vendor, in its discretion, may deem to be reasonably necessary or advisable to conclude the Transactions, including the execution of such deeds, contracts or documents as may be contemplated in the Subscription Agreement (including the Steps Memo) and all such deeds, contracts or documents are hereby ratified, approved and confirmed; and*

*13.1.2. take such steps as are deemed necessary or incidental to the implementation of the Transactions.*

[14] **ORDERS** and **DECLARES** *that the Applicants, Residual Co., and any successors of the Vendor are hereby permitted to execute and file articles of amendment, amalgamation, continuance or reorganization or such other documents or instruments as may be required to permit or enable and effect the Transactions and that such articles, documents or other instruments shall be deemed to be duly authorized, valid and effective notwithstanding any requirement under federal, provincial or territorial law to obtain director or shareholder approval with respect to such actions or to deliver any statutory declarations that may otherwise be required by law to effect the Transactions.*

[15] **ORDERS** and **DECLARES** *that this Order shall constitute the only authorization required by the Applicants, Residual Co., and any successors to proceed with the Transactions and that no partner, director, shareholder, contractual or regulatory approval shall be required in connection with any of the steps contemplated pursuant to the Transactions and the execution, delivery, and performance of the foregoing have been and are within the power of the relevant parties, have been and are duly authorized by all necessary actions, and are hereby ratified for all intents and purposes.*

[16] **ORDERS** and **DECLARES** *that any defects in any proceedings, appointments, election, payments or any other corporate acts by the Applicants shall henceforth be deemed to be rectified and corrected, the whole provided such acts, proceedings, appointments, elections, payments or other corporate acts were permitted by law at the relevant times.*

[17] **ORDERS** *the Director appointed pursuant section 260 of the Canada Business Corporations Act, R.S.C., 1985, c. C-44 (the "**CBCA**") and the Registraire des entreprises du Québec pursuant to the Business Corporations Act, CQLR c S-31.1 to accept and receive any articles of amendment, amalgamation, continuance or reorganization or such other documents or instruments as may be required to permit or enable and effect the Transactions, filed by the Vendor, Residual Co., or any successors pursuant to the Transactions, as the case may be.*

[18]   **ORDERS** and **DECLARES** that upon the issuance of a Monitor's certificate substantially in the form appended as **Schedule "A"** hereto (the "**Certificate**") to the Vendor and the Purchaser, the following shall occur and shall be deemed to have occurred on the Closing Date, all in accordance with the Closing Sequence set out in the Subscription Agreement and the steps contemplated thereunder:

18.1.1.  the Pre-Closing Reorganization shall be completed, and the transactions set out in the Steps Memo shall occur and shall be deemed to have occurred in the sequence set out in the Steps Memo, including for greater certainty (i) the addition of Residual Co. as an Applicant in these CCAA proceedings in accordance with paragraph [31](a) and [31](b), (ii) the cancellation of the Legacy Preferred Equity Interests in accordance with paragraph [18](b), and (iii) the vesting of the Excluded Assets, Excluded Liabilities and Excluded Contracts in and to Residual Co. in accordance with paragraph [32];

18.1.2.  the Vendor shall, and shall be deemed to, redeem and acquire for cancellation each Legacy Preferred Equity Interest without any payment thereon, and all such redeemed Legacy Preferred Equity Interests together with any agreement, contract, plan, indenture, deed, certificate, subscription right, conversion right, pre-emptive right, option or other document or instrument governing or having been created or granted in connection with the Legacy Preferred Equity Interests shall be deemed terminated and cancelled;

18.1.3.  the Vendor shall issue the Subscribed Shares to the Purchaser, the Purchaser shall purchase the Subscribed Shares, the Consideration shall be paid in accordance with the Subscription Agreement, and all right, title and interest in and to the Subscribed Shares shall vest absolutely and exclusively in and with the Purchaser, free and clear of and from any and all claims (including any complaints or claims for fraud or fraudulent misrepresentation, breach of fiduciary duty, conversion, securities offences, violation of the Racketeer Influenced and Corrupt Organizations Act (U.S.), or misappropriations under the Defend Trade Secrets Act (U.S.)), Liabilities (direct, indirect, absolute or contingent), obligations, prior claims, right of retention, liens, security interests, charges, hypothecs, trusts, deemed trusts (statutory or otherwise), judgments or orders (including for injunctive relief or specific performance), writs of seizure or execution, notices of sale, contractual rights (including purchase options, rights of first refusal, rights of first offer or any other pre-emptive contractual rights) and encumbrances, whether or not they have been registered, published or filed and whether secured, unsecured or otherwise (collectively, the "**Encumbrances**"), including without limiting the generality of the foregoing, all Encumbrances created by order of this Court and all charges or security evidenced by registration, publication or filing pursuant to the Civil Code of Québec in movable / immovable property, and for greater certainty all of the Encumbrances affecting or relating to the Subscribed Shares be cancelled and discharged as against the

*Subscribed Shares, in each case effective as of the applicable time and date of the Certificate;*

*18.1.4. the Vendor shall, and shall be deemed to, redeem and acquire for cancellation each Legacy Common Equity Interest without any payment thereon, and all such redeemed Legacy Common Equity Interests together with any agreement, contract, plan, indenture, deed, certificate, subscription right, conversion right, pre-emptive right, option or other document or instrument governing or having been created or granted in connection with the Legacy Common Equity Interests shall be deemed terminated and cancelled; and*

*18.1.5. the Directors (as defined in the Initial Order) shall be deemed to have resigned from their positions without any further approvals, consents or other formalities being required and notwithstanding the provisions of any agreements governing the same, such resignations and releases to be effective at the Closing Time.*

[19]    **ORDERS** the Personal and Movable Real Rights Registrar of the Register for Personal and Movable Real Rights, upon presentation of the Certificate and a certified copy of this Order accompanied by the required application for registration and upon payment of the prescribed fees, to publish this Order and cancel the movable property Encumbrances listed in **Schedule "B"** hereto.

[20]    **ORDERS** and **DECLARES** that any distributions, disbursements or payments made under this Order, including, for greater certainty, pursuant to the Transactions, shall not constitute a "distribution" by any Person for the purposes of section 107 of the Corporations Tax Act (Ontario), section 22 of the Retail Sales Tax Act (Ontario), section 117 of the Taxation Act, 2007 (Ontario), section 34 of the Income Tax Act (British Columbia), section 104 of the Social Service Tax Act (British Columbia), section 49 of the Alberta Corporate Tax Act, section 22 of the Income Tax Act (Manitoba), section 73 of The Tax Administration and Miscellaneous Taxes Act (Manitoba), sections 14 and 14.0.0.1 of the Tax Administration Act (Québec), section 85 of The Income Tax Act, 2000 (Saskatchewan), section 48 of The Revenue and Financial Services Act (Saskatchewan), section 56 of the Income Tax Act (Nova Scotia), section 159 of the Income Tax Act (Canada), section 270 of the Excise Tax Act (Canada), section 46 of the Employment Insurance Act (Canada), or any other similar federal, provincial or territorial tax legislation (collectively, the "**Tax Statutes**"), and the Vendor in making any such distributions, disbursements or payments, as applicable, is merely a disbursing agent under this Order, including, for greater certainty, pursuant to the Transactions, and is not exercising any discretion in making such payments and no Person is "distributing" such funds for the purpose of the Tax Statutes, and the Vendor and any other Person shall not incur any liability under the Tax Statutes in

*respect of distributions, disbursements or payments made by it and the Vendor and any other Person is hereby forever released, remised and discharged from any claims against it under or pursuant to the Tax Statutes or otherwise at law, arising in respect of or as a result of distributions, disbursements or payments made by it in accordance with this Order, including, for greater certainty, pursuant to the Transactions, and any claims of this nature are hereby forever barred.*

[21]    **DECLARES** *that the present Order does not prevent the Canada Revenue Agency and the Agence du revenu du Québec (collectively, the "**Tax Agencies**") to set off or compensate, if applicable:*

*21.1.1.  on one hand, any claim of any of the Tax Agencies against any Applicant, and, on the other hand, any claim of such Applicant against such Tax Agency, provided that the aforementioned claims shall both be pertaining to periods prior to the Filing Date; and*

*21.1.2.  on one hand, any claim of any of the Tax Agencies against any Applicant, and, on the other hand, any claim of such Applicant against such Tax Agency, provided that the aforementioned claims shall both be pertaining to periods between the Filing Date and the Closing Time.*

[22]    **ORDERS** *and* **DECLARES** *that upon the issuance of the Certificate, all Persons shall be deemed to have waived any and all defaults of the Vendor, directly or indirectly, or non-compliance then existing or previously committed by the Vendor or caused by the Vendor, directly or indirectly, or non-compliance with any covenant, positive or negative pledge, warranty, representation, term, provision, condition or obligation, express or implied, in any contract, credit document, agreement for sale, lease or other agreement, written or oral, and any and all amendments or supplements thereto, existing between such Person and the Vendor, or its successors, arising from the insolvency of the Vendor, the filing by the Vendor under the CCAA or the completion of the Transaction, and any and all notices of default and demands for payment under any instrument, including any guarantee arising from such default, shall be deemed to have been rescinded, and except as expressly contemplated by the Subscription Agreement, all contracts (excluding the Excluded Contracts) to which the Vendor is party upon delivery of the Monitor's Certificate will be and remain in full force and effect.*

[23]    **ORDERS**, *for greater certainty, that: (a) nothing in paragraph [22] hereof shall waive, compromise or discharge any obligations of the Vendor in respect of any Retained Liabilities, and (b) the designation of any Encumbrance as a Retained Liability is without prejudice to the Vendor's right to dispute the existence, validity or quantum of any such Retained Liability, and (c) nothing in this Order or the Subscription Agreement shall affect or waive the Vendor's rights*

*and defences, both legal and equitable, with respect to any Retained Liability, including, but not limited to, all rights with respect to entitlements to set-off or compensation or recoupments against such Retained Liability.*

[24]     ***ORDERS*** *and* ***DECLARES*** *that the implementation of the Transactions shall be deemed not to constitute a change in ownership or change in control under any agreement, including without limiting the foregoing, any financial instrument, loan or financing agreement, executory contract or unexpired lease or contract, lease, permit or license in existence on the Closing Date and to which the Vendor is a party.*

[25]     ***ORDERS*** *that all monetary defaults of the Vendor in relation to each of the Retained Contracts will be remedied by the Purchaser within five (5) business days of the Closing Date, unless otherwise agreed to by the Purchaser and the applicable counterparty to the Retained Contract.*

[26]     ***ORDERS*** *and* ***DIRECTS*** *the Monitor to issue the Certificate as soon as practicable upon the occurrence of the closing of the Transactions.*

[27]     ***ORDERS*** *and* ***DIRECTS*** *the Monitor to file with the Court a copy of the Certificate, no later than two Business Days after the issuance thereof.*

[28]     ***DECLARES*** *that upon the issuance of the Certificate, the Transactions shall be deemed to constitute and shall have the same effect as a sale under judicial authority as per the provisions of the Code of Civil Procedure and a forced sale as per the provisions of the Civil Code of Québec.*

[29]     ***ORDERS*** *that, pursuant to clause 18(4) of the Act Respecting the Protection of Personal Information in the Private Sector (Québec), the Applicants or the Monitor, as the case may be, are authorized, permitted and directed to, at the Closing Time, disclose to the Purchaser and Residual Co., as applicable, all human resources and payroll information in the records of the Applicants pertaining to past and current employees of the Applicants. The Purchaser shall maintain and cause the Vendor, after Closing, to maintain and protect the privacy of such information, and Residual Co. shall maintain and protect the privacy of such information, as applicable, each in accordance with applicable law and shall be entitled to use the personal information provided to it in a manner which is in all material respects identical to the prior use of such information by the Vendor prior to Closing.*

[30]     ***ORDERS*** *that the Subscription Agreement and the Transactions shall constitute a "proposal" and this Order shall constitute a "reorganization", in each case for the purposes of Section 191 of the Canada Business Corporations Act.*

### CCAA APPLICANTS

[31]     **ORDERS** that upon the issuance of the Certificate, in accordance with the Closing Sequence set out in the Subscription Agreement (including the Steps Memo):

31.1.1.  Residual Co. is a company to which the CCAA applies;

31.1.2.  Residual Co. shall be added as an Applicant in these CCAA proceedings and any reference in any Order of this Court in respect of these CCAA proceedings to an "Applicant" or "Applicants" shall also refer to Residual Co. mutadis mutandis, and, for greater certainty, each of the CCAA Charges (as defined in the Initial Order) shall also constitute a charge on the property of Residual Co.; and

31.1.3.  Goli shall cease to be an Applicant in these CCAA proceedings, and shall be released from the purview of any Order of this Court granted in respect of these CCAA proceedings, including the CCAA Charges, save and except for the present Order, the terms of which (as they related to Goli) shall continue to apply in all respects.

[32]     **ORDERS** that upon the issuance of the Certificate, in accordance with the Closing Sequence set out in the Subscription Agreement (including the Steps Memo):

32.1.1.  all Excluded Liabilities, Excluded Assets and Excluded Contracts shall vest absolutely and exclusively, at the times provided for in the Closing Sequence and Steps Memo, in Residual Co., and all Encumbrances charging the Excluded Liabilities, Excluded Assets and Excluded Contracts shall continue to attach thereto with the same nature and priority as they had immediately prior to their transfer in each case;

32.1.2.  all Encumbrances shall attach to the Excluded Assets with the same priority as they had with respect to the assets and properties of the Vendor immediately prior to their transfer in each case;

32.1.3.  the Purchaser shall own and hold, to the exclusion of all other Persons, free and clear of and from any Encumbrances, except the Permitted Encumbrances listed in **Schedule "C"** hereto, all right, title and interest in the Subscribed Shares;

32.1.4. all debts, liabilities, taxes, obligations, indebtedness, contracts, leases, agreements, and undertakings of any kind or nature whatsoever of the Vendor, whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, due or not yet due, in law or equity and whether based in statute or otherwise,

*including, without limitation, the Excluded Liabilities or Excluded Contracts, arising before or after the CCAA filing of the Vendor, shall be transferred to, assumed by and vest absolutely and exclusively in Residual Co. with the same attributes and rights resulting from existing defaults of the Vendor, such that, as of the time provided in the Closing Sequence and Steps Memo, the Excluded Liabilities and the Excluded Contracts shall be novated in each case and become obligations of Residual Co. and not obligations of the Vendor, and the Vendor shall be forever released and discharged from such Excluded Liabilities and Excluded Contracts, and all Encumbrances shall be forever released and discharged, it being understood that nothing in the present Order shall be deemed to cancel any of the Permitted Encumbrances, as applicable to the Vendor;*

*32.1.5. the commencement or prosecution, whether directly, indirectly, derivatively or otherwise of any demands, claims, actions, counterclaims, suits, judgments, or other remedy or recovery with respect to any indebtedness, liability, obligation or cause of action against the Vendor (including any successor entity) in respect of the Excluded Liabilities and Excluded Contracts shall be permanently enjoined and barred;*

*32.1.6. the Retained Liabilities, including, without limitation, their amount and their secured or unsecured status, shall not be affected or altered as a result of the Subscription Agreement or the steps and actions taken in accordance with the terms thereof;*

*32.1.7. the nature, attributes (including rights resulting from existing defaults of the Vendor) and priority of the Excluded Liabilities, including, without limitation, their amount and their secured or unsecured status, shall not be affected or altered as a result of their transfer to and assumption by Residual Co.; and*

*32.1.8. any Person that, prior to the Closing Date, had a valid right or claim against the Vendor in respect of the Excluded Liabilities or the Excluded Contracts (each a "**Subject Claim**") shall no longer have such claim against the Vendor (including any successor corporation), but will have an equivalent claim against Residual Co. in respect of the Excluded Liabilities or the Excluded Contracts from and after the Closing Date in its place and stead, with the same attributes and rights resulting from existing defaults of the Vendor and, nothing in this Order limits, lessens, modifies (other than by change of debtor) or extinguishes the Excluded Liabilities or the Excluded Contracts or the Subject Claim of any Person as against Residual Co., and Residual Co. shall be the sole and exclusive debtor of such Subject Claim.*

500-11-063787-242                                                                                              PAGE: 10

### *RELEASES*

[33]     ***ORDERS*** *that effective upon the issuance of the Certificate, (i) the Vendor, Martin Leroux, Michael Bitensky, Deepak Agarwal, and Randy Bitensky, and (ii) the Purchaser and its present and former directors, officers, employees, shareholders, legal counsel and advisors (the Persons listed in (i) and (ii) being collectively, the "**Released Parties**") shall be deemed to be forever irrevocably released and discharged from any and all present and future claims whatsoever (including, without limitation, claims for contribution or indemnity), liabilities, indebtedness, demands, actions, causes of action, complaints, counterclaims, suits, damages, judgements, orders (including for injunctive relief or specific performance), executions, recoupments, debts, sums of money, expenses, accounts, liens, taxes, recoveries, and obligations of any nature or kind whatsoever (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, matured or unmatured or due or not yet due, in law or equity and whether based in statute or otherwise) based in whole or in part on any act or omission, transaction, offer, investment proposal, dealing, statutory declaration under the CBCA as permitted pursuant to the terms of this Order, or other occurrence existing or taking place prior to the issuance of the Certificate or completed pursuant to the terms of this Order and/or in connection with the Transactions, in respect of the Vendor or its assets, business or affairs, or prior dealings with the Vendor, wherever or however conducted or governed, the administration and/or management of the Vendor and these CCAA proceedings (collectively, the "**Released Claims**"), which Released Claims are hereby fully, finally, irrevocably and forever waived, discharged, released, cancelled and barred as against the Released Parties, and are not vested nor transferred to Residual Co. or to any other entity and are extinguished. Nothing in this paragraph shall waive, discharge, release, cancel or bar any claim against past and present directors of the Vendor (Martin Leroux, Michael Bitensky and Deepak Agarwal) that relate to contractual rights of one or more creditors, or that is based on allegations of misrepresentations made by directors to creditors, or based on wrongful or oppressive conduct by directors, as it is not permitted pursuant to section 5.1(2) CCAA. Furthermore, nothing in this paragraph shall waive, discharge, release, cancel or bar the claims against past and present directors, officers and employees of the Vendor asserted in (a) the claims before the United States District Court for the Central District of California (case 2:23-cv-06597-CAS-MAA) against Goli Nutrition, Inc., 12416913 Canada Inc. (Predecessor 3), Deepak Agarwal, Michael Bitensky, VMG Partners Mentors Circle IV L.P., VMG Partners IV, L.P., Merical Inc., Randy Bitensky, VMG Partners, Wayne Wu, Jonathan Marshall and Roger Tyre by Sharon Hoffman and Odelya Hoffman et al., as amended (the "Hoffman v Goli Claim"), and (b) any filing of the claims asserted in the Hoffman v Goli Claim as compulsory counterclaims in the claim before the United States District Court for the Central*

*District of California (case 5:23-cv-00514-GW-DTB) against Sharon Hoffman by Goli Nutrition Inc.*

[34]     **ORDERS** *that, notwithstanding:*

*34.1.1.  the pendency of these proceedings;*

*34.1.2.  any applications for a bankruptcy order now or hereafter issued pursuant to the Bankruptcy and Insolvency Act (Canada) (the "**BIA**") in respect of any Applicant or Residual Co. and any bankruptcy order issued pursuant to any such applications; and*

*34.1.3. any assignment in bankruptcy made in respect of any Applicant or Residual Co.,*

*the implementation of the Transactions, including the transfer of the Excluded Assets, Excluded Liabilities, and Excluded Contracts to Residual Co. and the implementation of the Transactions under and pursuant to the Subscription Agreement, including those steps contemplated in the Steps Memo (i) shall be binding on any trustee in bankruptcy that may be appointed in respect of any Applicant or Residual Co. and shall not be void or voidable by creditors of the Applicants or Residual Co., as applicable (ii) shall not constitute nor be deemed to be a fraudulent preference, assignment, fraudulent conveyance, transfer at undervalue, or other reviewable transactions under the BIA or any other applicable federal, provincial or territorial legislation, and (iii) shall not constitute nor be deemed to be oppressive or unfairly prejudicial conduct by any Applicant, Residual Co., the Purchaser or the Monitor pursuant to any applicable federal, provincial or territorial legislation.*

### **_DISTRIBUTIONS_**

[35]     **ORDERS** *the Monitor, at Closing, to distribute the Deposit, by wire transfer of immediately available funds to BMO, as agent for the Syndicated Lenders.*

[36]     **ORDERS** *the Applicants to pay the Closing Payment Amount, by wire transfer of immediately available funds to BMO, as agent for the Syndicated Lenders.*

[37]     **ORDERS AND DECLARES** *that the distribution and the payment contemplated in paragraphs [35] and [36] of this Order are hereby authorized and approved and that this Order shall constitute the only authorization or approval required to proceed with the distribution of the Deposit and payment of the Closing Payment Amount.*

[38]     **ORDERS** *that notwithstanding:*

*38.1.1. the pendency of these proceedings;*

*38.1.2. any applications for a bankruptcy order now or hereafter issued pursuant to the Bankruptcy and Insolvency Act (Canada) (the "**BIA**") in respect of any Applicant or Residual Co. and any bankruptcy order issued pursuant to any such applications; and*

*38.1.3. any assignment in bankruptcy made in respect of any Applicant or Residual Co.,*

*distribution and the payment contemplated in paragraphs [35] and [36] of this Order (i) shall be binding on any trustee in bankruptcy that may be appointed in respect of any Applicant or Residual Co. and shall not be void or voidable by creditors of the Applicants or Residual Co., as applicable (ii) shall not constitute nor be deemed to be a fraudulent preference, assignment, fraudulent conveyance, transfer at undervalue, or other reviewable transactions under the BIA or any other applicable federal, provincial or territorial legislation, and (iii) shall not constitute nor be deemed to be oppressive or unfairly prejudicial conduct by any Applicant, Residual Co., the Purchaser, the Monitor, or any other parties to these CCAA proceedings pursuant to any applicable federal, provincial or territorial legislation.*

[39]    **DECLARES** *that, in addition to any protections afforded to the Monitor under the CCAA, this Order, or any other order of the Court, the Monitor shall incur no liability whatsoever, including under any federal, provincial or foreign tax legislation, in respect of it making any of the distributions authorized by this Order.*

### THE MONITOR

[40]    **ORDERS** *that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is authorized, entitled and empowered to assign or cause to be assigned, at any time after the Closing Date, Residual Co. into bankruptcy and the Monitor shall be entitled but not obligated to act as trustee in bankruptcy of Residual Co.*

[41]    **DECLARES** *that, subject to other orders of this Court, nothing herein contained shall require the Monitor to occupy or take control, or to otherwise manage all or any part of the assets of the Applicants or Residual Co. The Monitor shall not, as a result of this Order, be deemed to be in possession of any assets of the Applicants or Residual Co. within the meaning of environmental legislation or otherwise.*

[42]    **ORDERS AND DECLARES** *that no provision of this Order is intended to appoint the Monitor, or any of its employees or representatives, as an officer, director or employee of any of the Applicants or Residual Co., de facto or*

*otherwise, or to create a fiduciary duty to any party, including any creditor or shareholder of the Applicants or Residual Co.*

[43]     **AUTHORIZES** *the Monitor, its employees and representatives, to act in accordance with the Subscription Agreement, including with respect to the administration and disbursement of any amounts held in trust pursuant thereto, and to take any actions that are necessary or useful to give effect to the Subscription Agreement and this Order.*

[44]     **DECLARES** *that without limiting any other protection afforded to the Monitor under the CCAA, this Order or any other order of the Court:*

*44.1.1.  the Monitor, as well as its employees and representatives, shall incur no liability whatsoever as a result of acting in accordance with this Order and the Subscription Agreement approved herein, other than any liability arising directly out of the gross negligence or wilful misconduct of the Monitor; and*

*44.1.2. no action lies against the Monitor by reason of this Order or the performance of any act authorized by this Order, except by leave of the Court on ten (10) days notice to the Monitor and its counsel.*

*The entities related to the Monitor or belonging to the same group as the Monitor shall benefit from the protections arising under the present paragraph.*

***GENERAL***

[45]     **ORDERS** *that the Purchaser and the Applicants shall be authorized to take all steps as may be necessary to effect the discharge of the Encumbrances other than Permitted Encumbrances as against the assets of the Applicants.*

[46]     **DECLARES** *that this Order shall have full force and effect in all provinces and territories in Canada.*

[47]     **DECLARES** *that the Monitor shall be authorized to apply as it may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America or elsewhere, for orders which aid and complement the Order and, without limitation to the foregoing, an order under Chapter 15 of the U.S. Bankruptcy Code, recognizing the Order. All courts and administrative bodies of all such jurisdictions are hereby respectfully requested to make such orders and to provide such assistance to Monitor as may be deemed necessary or appropriate for that purpose.*

[48]     **REQUESTS** *the aid and recognition of any court or administrative body in any province or territory of Canada and any Canadian federal court or administrative body and any federal or state court or administrative body in the*

*United States of America and any court or administrative body elsewhere, to act in aid of and to be complementary to this Court in carrying out the terms of the Order.*

[49]    **ORDERS** *the provisional execution of the present Order notwithstanding any appeal and without the requirement to provide any security or provision for costs whatsoever.*

[50]    **THE WHOLE WITHOUT COSTS.**

_____
MARTIN F. SHEEHAN, J.S.C.

Mtre Christian Lachance
Mtre Benjamin Jarvis
**DAVIES WARD PHILLIPS & VINEBERG LLP**
Attorneys for the Debtors

Mtre Noah Zucker
Mtre Charlotte Dion
**NORTON ROSE FULBRIGHT CANADA S.E.N.C.R.L.,S.R.L.**
Attorneys for the Monitor

Mtre Sandra Abitan
Mtre Ilia Kravtsov
**OSLER, HOSKIN & HARCOURT LLP**
Attorneys for the Lenders

Mtre Alexander Bayus
**FASKEN MARTINEAU LLC**
Attorney for the Agent

Mtre Jonathan Bashir-Legault
Attorney for the Canadian Revenue Agency

Mtre Gerry Apostolatos
**LANGLOIS LAWYERS LLP**
Attorney for Parker Group Inc.

<u>500-11-063787-242</u>                                                                                              PAGE: 15

Mtre Jonathan Bell
Mtre Pascale Dionne Bourassa
**BENNETT JONES S.E.N.C.R.L., SRL**
Attorney for the Purchasers

Mtre Nick Scheib
Attorney for Mr. Michael Betinsky

Mtre Joseph Reynaud
Mtre Maria Kunyukhova
**STIKEMAN ELLIOTT LLP**
Attorneys for VMG Partners II, LLC, Mr. Jon Marshall and Mr. Wayne Wu

Mtre Joshua Bouzaglou
Mtre Sylvain Rigaud
**WOODS LLP**
Attorneys for the Hoffman Parties

Mtre Mélanie Martel
**DLA PIPER (CANADA) LLP**
Attorneys for DLA Piper (US) LLP


Hearing date:         April 9, 2024