## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ------------------------------------------------------------- x | |
| In re: | : Chapter 15 |
| GOLI NUTRITION INC., *et al.*,[1] | : Case No. 24-10438 (LSS) |
| | : Jointly Administered |
| Debtors in a Foreign Proceeding. | : |
| ------------------------------------------------------------- x | **Ref. Nos. 1 & 2** |

### FINAL ORDER GRANTING RECOGNITION OF FOREIGN MAIN
### PROCEEDINGS AND CERTAIN RELATED RELIEF

This matter came before the Court upon the *Petitioner's Verified Petition Under Chapter 15 for Recognition of the Canadian Proceedings and Request for Related Relief* (the "Verified Petition")[2] of Deloitte Restructuring Inc. (the "Petitioner"), in its capacity as the court-appointed monitor of the above captioned debtors (collectively, the "Debtors") in insolvency proceedings (the "Canadian Proceedings") commenced under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "CCAA") pending before the Superior Court, sitting in the Commercial Division for the district of Montréal (the "Canadian Court") and as the duly authorized foreign representative as defined by section 101(24) of title 11 of the United States Code (the "Bankruptcy Code"); and the Court having jurisdiction to consider the Verified Petition and the relief requested therein in accordance with sections 157 and 1334 of title 28 of the United States Code, sections 109 and 1501 of the Bankruptcy Code, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012 (the "Amended Standing Order"); and consideration of the Verified Petition and the relief

---

[1] The Debtors in these Chapter 15 cases, are: Goli Canada (as defined herein) and the last 4 digits of its Canadian business number is 0002; and Goli US (as defined herein) and the last 4 digits of its federal tax identification number is 2655. The Debtors are collectively managed from their corporate headquarters which are located at 2205 Boul. De la Côte-Vertu, suite 200, Montreal, Québec, Canada

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Verified Petition.

requested therein being a core proceeding pursuant to section 157(b) of title 28 of the United States Code; and due and proper notice of the relief sought in the Verified Petition having been provided; and it appearing that no other or further notice need be provided; and the Court having entered the *Order Granting Provisional Relief Pursuant to Bankruptcy Code Section 1519* [Docket No. 31] ("Provisional Relief Order") on March 22, 2024; and a hearing having been held to consider the relief requested in the Verified Petition (the "Hearing") on a final basis; and the appearances of all interested parties having been noted in the record of the Hearing; and the Court having considered, among other things, (i) the Verified Petition, (ii) the *Declaration of Noah Zucker in Support of (A) Petitioner's Verified Petition Under Chapter 15 for Recognition of the Canadian Proceedings and Request for Related Relief, and (B) Motion for Provisional Relief and (C) Motion for Order Enforcing CCAA Vesting Orders* [Docket No. 6], and (iii) the *Supplemental Declaration of Noah Zucker in Support of (A) Petitioner's Verified Petition Under Chapter 15 for Recognition of the Canadian Proceedings and Request for Related Relief, (B) Motion for Provisional Relief, and (C) Motion for Order Enforcing CCAA Vesting Orders* [Docket No. 56] (collectively, the "Chapter 15 Papers"), (iv) the record of the Hearing, and (v) all of the proceedings before the Court in these Chapter 15 cases; and the Court having found and determined that the relief sought in the Verified Petition is in the best interests of the Debtors, their creditors, and all parties in interest and that the legal and factual bases set forth in the Chapter 15 Papers and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor *and for the reasons set forth in the Court's bench ruling on April 18, 2024, including that all objections were resolved*

**THIS COURT HEREBY FINDS AND DETERMINES THAT:**

A.    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding

pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute

conclusions of law, they are adopted as such.  To the extent any of the following conclusions of

law constitute findings of fact, they are adopted as such.

      B.      This Court has jurisdiction to consider this matter pursuant to sections 157 and 1334

of title 28 of the United States Code and the Amended Standing Order.

      C.      This is a core proceeding pursuant to section 157(b)(2)(P) of title 28 of the United

States Code.

      D.      Venue for this proceeding is proper before this Court pursuant to section 1410 of

title 28 of the United States Code.

      E.      On March 19, 2024, these Chapter 15 cases were commenced by the Petitioner's

filing of a voluntary *Chapter 15 Petition for Recognition of a Foreign Proceeding* for each Debtor

contemporaneously with the filing of the Verified Petition.  Attached to the Verified Petition is a

copy of the order (the "Initial Order") of the Canadian Court entered in the Canadian Proceedings

appointing the Petitioner as Monitor and foreign representative of the Debtors and granting

additional relief.

      F.      Each of the Canadian Proceedings is a "foreign proceeding" as defined by section

101(23) of the Bankruptcy Code.

      G.      The Petitioner is the duly appointed "foreign representative" of each of the Debtors

within the meaning of section 101(24) of the Bankruptcy Code.

      H.      These Chapter 15 cases were properly commenced pursuant to sections 1504, 1509,

and 1515 of the Bankruptcy Code.

      I.      The Petitioner has satisfied the requirements of section 1515 of the Bankruptcy

Code and Bankruptcy Rule 2002(q).

J.　　　Each of the Canadian Proceedings is entitled to recognition by this Court pursuant to section 1517 of the Bankruptcy Code.

K.　　　Canada is the center of main interests of each of the Debtors, and accordingly, each of the Canadian Proceedings is a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code and is entitled to recognition as a foreign main proceeding pursuant to section 1517(b)(l) of the Bankruptcy Code.

L.　　　The Petitioner is entitled to all the relief available pursuant to section 1520 of the Bankruptcy Code, including, without limitation, application of the automatic stay pursuant to section 362 of the Bankruptcy Code and application of section 365(e) of the Bankruptcy Code.

M.　　　The relief granted herein is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States, and warranted pursuant to sections 1517, 1520, and 1521 of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.　　　The Verified Petition is granted as to each of the Debtors as set forth herein.

2.　　　Each of the Canadian Proceedings in respect of the Debtors is granted recognition as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code.

3.　　　The Amended and Restated Initial Order issued by the Canadian Court on April 11, 2024, a copy of which is annexed hereto as Exhibit 1, and the provisions thereof are hereby ~~extended comity and~~ enforced on a final basis and given full force and effect in the United States.

4.　　　All relief afforded to foreign main proceedings pursuant to section 1520 of the Bankruptcy Code is hereby granted to each of the Canadian Proceedings, each of the Debtors, and the Petitioner, as applicable.

5.　　　Section 362 of the Bankruptcy Code shall hereby apply with respect to each of the

Debtors and their respective property that is within the territorial jurisdiction of the United States.

6.  All entities (as that term is defined in section 101(15) of the Bankruptcy Code), other than the Petitioner and its authorized representatives and/or agents are hereby enjoined from, without limitation:

    (a)  enforcing any rights or obligations or otherwise executing against any of the Debtors' assets or other properties;

    (b)  commencing or continuing, including the issuance or employment of process, of a judicial, administrative, arbitral, or other action or proceeding, or to recover a claim, including without limitation any and all unpaid judgments, settlements, or otherwise against the Debtors in the United States;

    (c)  taking or continuing any act to create, perfect, or enforce a lien or other security interest, set-off, or other claim against the Debtors or any of their property;

    (d)  transferring, relinquishing, or disposing of any property of the Debtors to any entity (as that term is defined in section 101(15) of the Bankruptcy Code) other than the Petitioner or the Debtors;

    (e)  enforcing, commencing, or continuing an individual action or proceeding concerning the Debtors' assets, rights, obligations, or liabilities; and

    (f)  terminating any agreements, leases, contracts, or understandings, or otherwise enforcing rights, accelerating obligations, or exercising remedies of any kind in respect thereof.

~~7.  Subject to sections 1520 and 1521 of the Bankruptcy Code, the Canadian Proceedings shall be granted comity and given full force and effect in the United States to the same extent as in Canada, and each is binding on all creditors of the Debtors and any of their successors and assigns.~~

8.  Pursuant to section 1521(a)(6) of the Bankruptcy Code, all prior relief granted to the Debtors or the Petitioner by this Court pursuant to section 1519(a) of the Bankruptcy Code shall be extended and the Provisional Relief Order shall remain in full force and effect, notwithstanding anything to the contrary contained therein.

9.  Notwithstanding any applicable Bankruptcy Rules to the contrary, the terms and

conditions of this Order shall be immediately effective and enforceable upon its entry.

10.     The Petitioner is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Verified Petition.

11.     The Petitioner, the Debtors, and/or each of their successors, representatives, advisors, or counsel shall be entitled to the protections contained in sections 306 and 1510 of the Bankruptcy Code.

12.     This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any request for additional relief, any adversary proceeding brought in and through these Chapter 15 cases, and any request by an entity for relief from the provisions of this Order that is properly commenced and within the jurisdiction of this Court.

Dated:   April 18, 2024
    Wilmington, Delaware

          Honorable Laurie Selber Silverstein
          United States Bankruptcy Judge

# EXHIBIT 1

**SUPERIOR COURT**
(Commercial Division)
(Sitting as a court designated pursuant to the *Companies' Creditors Arrangement Act*,
R.S.C. 1985, c. C-36)

C A N A D A

PROVINCE OF QUEBEC
DISTRICT OF MONTRÉAL

No.: 500-11-063787-242

DATE : April 11, 2024

_____

IN THE PRESENCE OF THE HONOURABLE MARTIN F. SHEEHAN, J.S.C.

_____

IN THE MATTER OF THE PLAN OF COMPROMISE OR ARRANGEMENT OF:

**GOLI NUTRITION INC.**
and
**GOLI NUTRITION INC.**
    Applicants

and
**DELOITTE RESTRUCTURING INC.**
    Monitor

_____

**AMENDED AND RESTATED INITIAL ORDER**

_____

[1]    **ON READING** the Applicants' *Amended Application for the Issuance of a First Day Initial Order, an Amended and Restated Initial Order and Other Relief, Including the Approval of a Transaction* pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, C-36 (as amended the "**CCAA**") and the exhibits, the affidavit filed in support thereof (the "**Amended Application**"), the consent of Deloitte Restructuring Inc. (the "**Monitor**"), the reports of the Monitor dated March 16, 2024 and April 8, 2024, relying upon the submissions of counsel and being advised that the interested parties, including secured creditors who are likely to be affected by the charges created herein were given prior notice of the presentation of the Amended Application;

IS1699

[2]   **CONSIDERING** the issuance of the Approval and Reverse Vesting Order dated April 9, 2024 (the "**RVO**");

[3]   **CONSIDERING** the issuance of the Liquidation Order dated April ■, 2024 (the "**Liquidation Order**");

[4]   **GIVEN** the provisions of the CCAA;

**WHEREFORE, THE COURT**:

[5]   **GRANTS** the Amended Application.

[6]   **ISSUES** an order pursuant to the CCAA (the "**Order**"), divided under the following headings:

- Service

- Application of the CCAA and Administrative Consolidation

- Effective Time

- Plan of Arrangement

- Stay of Proceedings against the Applicants and the Property

- Stay of Proceedings against the Directors and Officers

- Possession of Property and Operations

- No Exercise of Rights or Remedies

- No Interference with Rights

- Continuation of Services

- Non-Derogation of Rights

- Syndicated Lenders Unaffected

- Directors' and Officers' Indemnification and Charge

- Restructuring

- Powers of the Monitor

- Priorities and General Provisions Relating to CCAA Charges

- Hearing scheduling and details

- General

## Service

[7]     **ORDERS** that any prior delay for the presentation of the Amended Application is hereby abridged and validated so that the Amended Application is properly returnable today and hereby dispenses with further service thereof.

[8]     **DECLARES** that sufficient prior notice of the presentation of this Amended Application has been given by Goli Nutrition Inc. ("**Goli**"), a corporation existing under the laws of Canada, and Goli Nutrition Inc., a corporation existing under the laws of Delaware ("**Goli US**" and, with Goli, the "**Applicants**"), to interested parties, including the secured creditors who are likely to be affected by the charges created herein.

## Application of the CCAA and Administrative Consolidation

[9]     **DECLARES** that each of the Applicants is a debtor company to which the CCAA applies.

[10]    **ORDERS** the consolidation of these CCAA proceedings of the Applicants (the "**CCAA Proceedings**") under one single Court file and that all proceedings, filings, and other matters in the CCAA Proceedings be filed jointly and together in Court file number 500-11-063787-242.

[11]    **DECLARES** that the consolidation of these CCAA Proceedings in respect of the Applicants shall be for administrative purposes only and shall not effect a consolidation of the assets and property or of the debts and obligations of each Applicant, including, without limitation, for the purposes of any Plan or Plans that may be hereafter proposed.

## Effective time

[12]    **DECLARES** that this Order and all of its provisions are effective as of 12:01 a.m. Montreal time, province of Quebec, on the date of this Order (the "**Effective Time**").

## Plan of Arrangement

[13]    **DECLARES** that the Applicants, in consultation with the Monitor, shall have the authority to file with this Court and to submit to their creditors one or more Plans in accordance with the CCAA.

**Stay of Proceedings against the Applicants and the Property**

[14]   **ORDERS** that until and including June 28, 2024 (the "**Stay Period**"), no proceeding or enforcement process in any court or tribunal (each, a "**Proceeding**") shall be commenced or continued against or in respect of the Applicants, or affecting the Applicants' business operations and activities (the "**Business**") or the Property (as defined herein below), including as provided in paragraph [19] hereinbelow except with leave of this Court.   Any and all Proceedings currently under way against or in respect of the Applicants or affecting the Business or the Property are hereby stayed and suspended pending further order of this Court, the whole subject to subsection 11.1 CCAA.

[15]   **ORDERS** that the rights of His Majesty in right of Canada and His Majesty in right of a Province are suspended in accordance with the terms and conditions of Subsection 11.09 CCAA.

**Stay of Proceedings against the Directors and Officers**

[16]   **ORDERS** that during the Stay Period and except as permitted under subsection 11.03(2) of the CCAA, no Proceeding may be commenced, or continued against any former, present or future director or officer of the Applicants nor against any person deemed to be a director or an officer of the Applicants under subsection 11.03(3) CCAA (each, a "**Director**", and collectively the "**Directors**") in respect of any claim against such Director which arose prior to the Effective Time and which relates to any obligation of the Applicants where it is alleged that any of the Directors is under any law liable in such capacity for the payment of such obligation.

**Possession of Property and Operations**

[17]   **ORDERS**, without prejudice to the rights and powers granted to the Monitor pursuant to this Order, that each of the Applicants shall remain in possession and control of its present and future assets, rights, undertakings and properties of every nature and kind whatsoever, and wherever situated, including all proceeds thereof (collectively the "**Property**"), the whole in accordance with the terms and conditions of this Order.

**No Exercise of Rights or Remedies**

[18]   **ORDERS** that during the Stay Period, and subject to, *inter alia*, subsection 11.1 CCAA, all rights and remedies of any individual, natural person, firm, corporation, partnership, limited liability company, trust, joint venture, association, organization, governmental body or agency, or any other entity (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Applicants, or affecting the Business, the Property or any part thereof, are hereby stayed and suspended except with leave of this Court.

[19]   **DECLARES** that, to the extent any rights, obligations, or prescription, time or limitation periods, including, without limitation, to file grievances, relating to the Applicants or any of the Property or the Business may expire (other than pursuant to the terms of any contracts, agreements or arrangements of any nature whatsoever), the term of such rights, obligations, or prescription, time or limitation periods shall hereby be deemed to be extended by a period equal to the Stay Period. Without limitation to the foregoing, in the event that the Applicants become bankrupt or a receiver as defined in subsection 243(2) of the *Bankruptcy and Insolvency Act* (Canada) (the "**BIA**") is appointed in respect of the Applicants, the period between the date of the Order and the day on which the Stay Period ends shall not be calculated in respect of the Applicants in determining the 30 day period referred to in Section 81.1 of the BIA or the 15 day period referred to in Section 81.2 of the BIA.

**No Interference with Rights**

[20]   **ORDERS** that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, suspend, repudiate, resiliate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Applicants, except with the written consent of the Applicants and the Monitor, or with leave of this Court.

**Continuation of Services**

[21]   **ORDERS** that during the Stay Period and subject to paragraph [24] hereof and subsection 11.01 CCAA, all Persons having verbal or written agreements with the Applicants or statutory or regulatory mandates for the supply of goods or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation, utility or other goods or services made available to the Applicants, are hereby restrained until further order of this Court from discontinuing, altering, interfering with terminating the supply or, where the case may be, interrupting, delaying or stopping the transit of such goods or services as may be required by the Applicants, and that the Applicants shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses, domain names or other services, provided in each case that the normal prices or charges for all such goods or services received after the date of the Order are paid by the Applicants, without having to provide any security deposit or any other security, in accordance with normal payment practices of the Applicants or such other practices as may be agreed upon by the supplier or service provider and the Applicants, with the consent of the Monitor, or as may be ordered by this Court.

[22]   **ORDERS** that, notwithstanding anything else contained herein and subject to subsection 11.01 CCAA, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided to the Applicants on or after the date of this Order, nor

shall any Person be under any obligation on or after the date of the Order to make further advance of money or otherwise extend any credit to the Applicants.

[23]   **ORDERS** that, without limiting the generality of the foregoing and subject to Section 21 of the CCAA, if applicable, cash or cash equivalents placed on deposit by the Applicants with any Person during the Stay Period, whether in an operating account or otherwise for themselves or for another entity, shall not be applied by such Person in reduction or repayment of amounts owing to such Person as of the date of the Order or due on or before the expiry of the Stay Period or in satisfaction of any interest or charges accruing in respect thereof; however, this provision shall not prevent any financial institution from: (i) reimbursing themselves for the amount of any cheques drawn by Applicants and properly honoured by such institution or (ii) holding the amount of any cheques or other instruments deposited into the Applicants' account until those cheques or other instruments have been honoured by the financial institution on which they have been drawn.

**Non-Derogation of Rights**

[24]   **ORDERS** that, notwithstanding the foregoing, any Person who provided any kind of letter of credit, guarantee or bond (the "**Issuing Party**") at the request of the Applicants shall be required to continue honouring any and all such letters, guarantees and bonds, issued on or before the date of the Order, provided that all conditions under such letters, guarantees and bonds are met save and except for defaults resulting from this Order; however, the Issuing Party shall be entitled, where applicable, to retain the bills of lading or shipping or other documents relating thereto until paid.

**Syndicated Lenders Unaffected**

[25]   **ORDERS** and **DECLARES** that Bank of Montreal ("**BMO**"), National Bank of Canada, Fédération des Caisses Desjardins and HSBC Bank Canada (collectively, the "**Syndicated Lenders**") are unaffected by this Order or the CCAA Proceedings, or pursuant to any proposal to be filed pursuant to the BIA or any other proceedings initiated thereunder, and the relationship between the Applicants and the Syndicated Lenders shall continue as if this Order had not been granted. Without limiting the generality of the foregoing, the Syndicated Lenders shall not be subject to the stay of proceedings, as ordered herein, including during the Stay Period or any renewal or extension thereof, or to any other limitations of creditors' right or recourses under this Order. Nothing in this Order shall prevent the Syndicated Lenders from enforcing their security or their contractual rights as against the applicable Applicant, subject only to the Syndicated Lenders providing at least five (5) business days advance written notice of their intention to do so to the Applicants and to the Monitor (the "**Syndicate Notice Period**"). Upon expiration of the Syndicated Notice Period, nothing in this Order shall preclude BMO, in its capacity as administrative agent for the Syndicated Lenders, from taking any and all steps under the loan

documents and otherwise permitted at law, but without having to send any demands or notices under Section 244 of the BIA.

[26]  **ORDERS** that the Syndicated Lenders shall be treated as unaffected creditors in any Plan and, notwithstanding anything contained in such Plan, shall be completely unaffected thereby.

**Directors' and Officers' Indemnification and Charge**

[27]  **ORDERS** that the Applicants shall indemnify their Directors from all claims relating to any obligations or liabilities they may incur and which have accrued by reason of or in relation to their respective capacities as directors or officers of the Applicants after the Effective Time, except where such obligations or liabilities were incurred as a result of such directors' or officers' gross negligence, wilful misconduct or gross or intentional fault as further detailed in Section 11.51 CCAA.

[28]  **ORDERS** that the Directors of the Applicants shall be entitled to the benefit of and are hereby granted a charge and security in the Property of the Applicants to the extent of the aggregate amount of $330,000 (the "**Directors' Charge**"), as security for the indemnity provided in paragraph [27] of this Order as it relates to obligations and liabilities that the Directors may incur in such capacity after the Effective Time. The Directors' Charge shall have the priority set out in paragraphs [47] and [48] of this Order.

[29]  **ORDERS** that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Directors shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts for which the Directors are entitled to be indemnified in accordance with paragraph [28] of this Order.

**Restructuring**

[30]  **DECLARES** that, to facilitate the orderly restructuring of their Business and financial affairs (the "**Restructuring**") but subject to such requirements as are imposed by the CCAA, the Applicants shall, in consultation with the Syndicated Lenders, have the right, subject to approval of the Monitor or further order of the Court, to:

(a)  permanently or temporarily cease, downsize or shut down any of their operations or locations as they deem appropriate and make provision for the consequences thereof in the Plan;

(b)   pursue all avenues to finance or refinance, market, convey, transfer, assign or in any other manner dispose of the Business or Property, in whole or part, subject to further order of the Court and sections 11.3 and 36 CCAA, and under reserve of subparagraph (c);

(c)   convey, transfer, assign, lease, or in any other manner dispose of the Property, outside of the ordinary course of business, in whole or in part, provided that the price in each case does not exceed $500,000 or $1,500,000 in the aggregate;

(d)   terminate the employment of their employees or temporarily or permanently lay off their employees as they deem appropriate and, to the extent that any amounts in lieu of notice, termination, or severance pay or other amounts in respect thereof are not paid in the ordinary course, make provision, on such terms as may be agreed upon between the Monitor, as applicable, the Applicants and such employees or, failing such an agreement, make provision to deal with, any consequences thereof in the Plan, as the Applicants may determine;

(e)   subject to the provisions of section 32 CCAA, disclaim or resiliate any of their agreements, contracts or arrangements of any nature whatsoever, with such disclaimers or resiliations to be on such terms as may be agreed between the Applicants and the relevant party or, failing such an agreement, to make provision for the consequences thereof in the Plan; and

(f)   subject to section 11.3 CCAA, assign any rights or obligations of the Applicants.

[31]  **DECLARES** that, if a notice of disclaimer or resiliation is given to a landlord of the Applicants pursuant to section 32 of the CCAA and subsection [30](e) of this Order, then (a) during the notice period prior to the effective time of the disclaimer or resiliation, the landlord may show the affected leased premises to prospective tenants during normal business hours by giving the Applicants and the Monitor 24 hours' prior written notice and (b) at the effective time of the disclaimer or resiliation, the landlord shall be entitled to take possession of any such leased premises and re-lease any such leased premises to third parties on such terms as the landlord may determine, without waiver of, or prejudice to, any claims or rights of the landlord against the Applicants, provided nothing herein shall relieve a landlord of its obligation to mitigate any damages claimed in connection therewith.

[32]  **ORDERS** that the Applicants shall provide to any relevant landlord notice of the Applicants' intention to remove any fittings, fixtures, installations or leasehold improvements at least seven (7) days in advance. If the Applicants have already

vacated the leased premises, they shall not be considered to be in occupation of such location pending the resolution of any dispute between the Applicants and the landlord.

[33]  **DECLARES** that, in order to facilitate the Restructuring, the Applicants may, subject to the approval of the Monitor or further order of the Court, settle claims of customers and suppliers that are in dispute.

[34]  **DECLARES** that, pursuant to sub-paragraph 7(3)(c) of the *Personal Information Protection and Electronic Documents Act*, S.C. 2000, c.5, and equivalent provisions of the *Act Respecting the Protection of Personal Information in the Private Sector*, R.S.Q. c. P-39.1, the Applicants are permitted, in the course of these proceedings, to disclose personal information of identifiable individuals in their possession or control to stakeholders or prospective investors, financiers, buyers, or strategic partners and to their advisers (each individually, a "**Third Party**"), but only to the extent desirable or required to negotiate and complete the Restructuring or the preparation and implementation of the Plan or a transaction for that purpose, provided that the Persons to whom such personal information is disclosed enter into confidentiality agreements with the Applicants binding them to maintain and protect the privacy of such information and to limit the use of such information to the extent necessary to complete the transaction or Restructuring then under negotiation. Upon the completion of the use of personal information for the limited purpose set out herein, the personal information shall be returned to the Applicants or destroyed. In the event that a Third Party acquires personal information as part of the Restructuring or the preparation or implementation of the Plan or a transaction in furtherance thereof, such Third Party may continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the Applicants.

**Powers of the Monitor**

[35]  **ORDERS** that Deloitte Restructuring Inc., a licensed insolvency trustee, is hereby appointed to monitor the Business and financial affairs of the Applicants as an officer of this Court (the "**Monitor**") and that the Monitor, in addition to the prescribed powers and obligations, referred to in Section 23 of the CCAA and as provided for elsewhere in this Order:

(a)  shall, as soon as possible, (i) publish in the National Post, La Presse and the Wall Street Journal and (ii) within five (5) business days after the date of this Order, (A) post on the Monitor's website (the "**Website**"), a notice containing the information prescribed under the CCAA, (B) make this Order publicly available in the manner prescribed under the CCAA, (C) send, in the prescribed manner, a notice to all known creditors having a claim against the Applicants of more than $1,000, advising them that the Order is publicly available, and (D) prepare a list showing the names and addresses of such creditors and the estimated amounts of their respective claims, and make it publicly available in the prescribed manner, all in

accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder;

(b)     shall monitor the Applicants' receipts and disbursements;

(c)     shall assist the Applicants, to the extent required by the Applicants, in dealing with their creditors and other interested Persons during the Stay Period;

(d)     shall assist the Applicants, to the extent required by the Applicants, with the preparation of their cash-flow projections and any other projections or reports and the development, negotiation and implementation of the Plan;

(e)     shall advise and assist the Applicants, to the extent required by the Applicants, to review the Applicants' business and assess opportunities for cost reduction, revenue enhancement, and operating efficiencies;

(f)     shall assist the Applicants, to the extent required by the Applicants, with the Restructuring and in their negotiations with their creditors and other interested Persons and with the holding and administering of any meetings held to consider the Plan;

(g)     shall report to the Court on the state of the business and financial affairs of the Applicants or developments in these proceedings or any related proceedings within the time limits set forth in the CCAA and at such time as considered appropriate by the Monitor or as the Court may order;

(h)     shall report to the Syndicated Lenders on the state of the operations, business and financial affairs of the Applicants or developments in the CCAA Proceedings or any related proceedings;

(i)     shall report to this Court and interested parties, including but not limited to creditors affected by the Plan, with respect to the Monitor's assessment of, and recommendations with respect to, the Plan, if applicable;

(j)     may retain and employ such agents, advisers and other assistants as are reasonably necessary for the purpose of carrying out the terms of the Order, including, without limitation, one or more entities related to or affiliated with the Monitor;

(k)     may engage legal counsel to the extent the Monitor considers necessary in connection with the exercise of its powers or the discharge of its obligations in these proceedings and any related proceeding, under the Order or under the CCAA;

(l)     may act as a "foreign representative" of the Applicants or in any other similar capacity in any insolvency, bankruptcy or reorganisation proceedings outside of Canada;

(m)   may give any consent or approval as may be contemplated by the Order or the CCAA; and

(n)   may perform such other duties as are required by the Order or the CCAA or by this Court from time to time.

Unless expressly authorized to do so by this Court and subject to the powers granted to the Monitor under this order upon the filing by the Monitor of the Certificate (as defined in the RVO), the Monitor shall not otherwise interfere with the business and financial affairs carried on by the Applicants, and the Monitor is not empowered to take possession of the Property nor to manage any of the business and financial affairs of the Applicants.

[36]   **ORDERS** that in addition to the powers outlined in paragraph [35] and subject to further orders of the Court, the Monitor, upon the filing of the Certificate, is hereby authorized but not required, for and on behalf of any of the Applicants (which for greater certainty will be, upon the filing of the Certificate, Residual Co. (as defined in the RVO) and GOLI USA), to:

(a)   conduct and control the financial affairs and operations of any of the Applicants and carry on the business of any of the Applicants;

(b)   execute banking and other transactions on behalf of any of the Applicants and to execute any documents or take any other action that is necessary or appropriate for the purpose of the exercise of this power;

(c)   initiate proceedings and execute such documents as may be necessary in connection with any proceedings before this Court or pursuant to any order of this Court;

(d)   take steps for the preservation and protection of the Business and the Property;

(e)   take any action that any of the Applicants can take pursuant to the CCAA or this Order;

(f)   negotiate and enter into agreements with respect to the Business or the Property;

(g)   take any steps required to be taken by the Applicants under this Order or any further order of the Court;

(h)   exercise any shareholder, partner, member or other rights and privileges available to any of the Applicants for and on behalf of any of them;

(i)   provide information to the Syndicated Lenders regarding the Business and the Property;

(j) examine under oath any Person reasonably thought to have knowledge relating to any of the Applicants, the Business or the Property and compel any such Person to produce any books, recors, correspondence or documents in that Person's possession or power relating to the Applicants, the Business or the Property;

(k) file a voluntary assignment in bankruptcy on half of any of the Applicants and to take any steps incidental thereto; and

(l) take any steps, enter into agreements, execute any documents, incur any obligations or take any action necessary, useful or incidental to the exercise of any of the aforesaid powers.

[37] **DECLARES** that, upon the filing of the Certificate, the Monitor shall be authorized and empowered, but not required, to operate and control, on behalf of the Applicants, all of the Applicants' existing accounts at any financial institution (each an "**Account**" and collectively, the "**Accounts**") in such manner as the Monitor, in its sole discretion, deems necessary or appropriate, including, without limitation, to:

(a) exercise control over the funds credited to or deposited in the Accounts;

(b) effect any disbursement from the Accounts permitted by this Order or any other order granted in these CCAA Proceedings;

(c) give instructions from time to time with respect to the Accounts and the funds credited to or deposited therein, including to transfer the funds credited to or deposited in such Accounts to such other account or accounts as the Monitor may direct; and

(d) add or remove persons have signing authority with respect to any Account or to direct the closing of any Account.

[38] **ORDERS** that that neither the Monitor nor any employee or agent of the Monitor shall be deemed to (i) be a director, officer or trustee of the Applicants, (ii) assume any obligation of the Applicants, or (iii) assume any fiduciary duty towards the Applicants or any other Person, including any creditor or shareholder of the Applicants.

[39] **ORDERS** and **DECLARES** that nothing herein imposes an obligation on the Monitor to take possession, control, care, charge or otherwise assume management of any of the Property ("**Possession**"), including Possession of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the Canadian Environmental Protection Act, 1999, SC 1999, c

33, the Quebec Environment Quality Act, CQLR c Q-2, or the Act respecting occupational health and safety, CQLR c S-2.1, and regulations thereunder, as well as any other applicable legislation (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. The Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation or otherwise, unless it is actually in possession.

[40]    **DECLARES** that the entities related to or affiliated with the Monitor, as referred to in subparagraph [35](j), are also entitled to the safeguards, benefits, privileges and protections granted to the Monitor under this Order.

[41]    **ORDERS** that the Applicants and their Directors, officers, employees and agents, accountants, auditors and all other Persons having notice of the Order shall forthwith provide the Monitor with unrestricted access to all of the Business and Property, including, without limitation, the premises, books, records, data, including data in electronic form, and all other documents of the Applicants in connection with the Monitor's duties and responsibilities hereunder.

[42]    **DECLARES** that the Monitor may provide creditors and other relevant stakeholders of the Applicants with information in response to requests made by them in writing addressed to the Monitor and copied to the Applicants' counsel. In the case of information that the Monitor has been advised by the Applicants is confidential, proprietary or competitive, the Monitor shall not provide such information to any Person without the consent of the Applicants, unless otherwise directed by this Court.

[43]    **DECLARES** that, if the Monitor, in its capacity as Monitor, carries on the business of the Applicants or continues the employment of the Applicants' employees, the Monitor shall benefit from the provisions of section 11.8 of the CCAA.

[44]    **DECLARES** that no action or other proceedings shall be commenced against the Monitor relating to its appointment, its conduct as Monitor, or the carrying out the provisions of any order of this Court, except with prior leave of this Court, on at least ten (10) days notice to the Monitor and its counsel. The entities related to or affiliated with the Monitor referred to in subparagraph [35](j) hereof shall also be entitled to the protection, benefits and privileges afforded to the Monitor pursuant to this paragraph.

[45]    **ORDERS** that Applicants shall pay the reasonable fees and disbursements of the Monitor, the Monitor's legal counsel, the Applicants' legal counsel, and other advisers that are directly related to these proceedings, the Plan, and the Restructuring, whether incurred before or after the Order, and shall provide each

with a reasonable retainer in advance on account of such fees and disbursements, if so requested.

[46]     **DECLARES** that the Monitor, the Monitor's legal counsel (Norton Rose Fullbright Canada LLP and Norton Rose Fullbright US LLP), the Applicants' legal counsel (Davies Ward Phillips & Vineberg LLP), legal counsel to the Syndicated Lenders (Osler Hoskin & Harcourt LLP and McDonald Hopkins), as security for the professional fees and disbursements incurred both before and after the making of the Order and directly related to these proceedings, the Plan, and the Restructuring, be entitled to the benefit of and are hereby granted a charge and security in the Property of the Applicants to the extent of the aggregate amount of $750,000 (the "**Administration Charge**"), having the priority established by paragraphs [47] and [48] hereof. Davies Ward Phillips & Vineberg LLP shall rank first amongst the beneficiairies of the Administation Charge listed in this paragraph.

**Priorities and General Provisions Relating to CCAA Charges**

[47]     **DECLARES** that the priorities of the Administration Charge, the Directors' Charge (collectively, the "**CCAA Charges**") and the Syndicated Lenders' Security (as defined in the Amended Application), as between them with respect to any Property to which they apply, shall be as follows:

   (a)     first, the Administration Charge;

   (b)     second, the Syndicated Lenders' Security; and

   (c)     third, the Directors' Charge.

[48]     **DECLARES** that the Agent Charge (as such term is defined in the Liquidation Order) shall have the rank provided for in the Liquidation Order.

[49]     **DECLARES** that each of the CCAA Charges shall rank in priority to any and all other hypothecs, mortgages, liens, security interests, priorities, charges, deemed trust, encumbrances or security of whatever nature or kind (collectively, the "**Encumbrances**") affecting the Property charged by such Encumbrances, other than the Directors' Charge, which shall rank after the Syndicated Lenders' Security.

[50]     **ORDERS** that, except as otherwise expressly provided for herein, the Applicants shall not grant any Encumbrances in or against any Property that rank in priority to, or *pari passu* with, any of the CCAA Charges, unless the Applicants obtain the prior written consent of the Monitor, the Syndicated Lenders, and the prior approval of the Court.

[51]  **DECLARES** that each of the CCAA Charges shall attach, as of the Effective Time, to all present and future Property of the Applicants, notwithstanding any requirement for the consent of any party to any such charge or to comply with any condition precedent.

[52]  **DECLARES** that the CCAA Charges and the rights and remedies of the beneficiaries of such Charges, as applicable, shall be valid and enforceable and shall not otherwise be limited or impaired in any way by: (i) these proceedings and the declaration of insolvency made herein; (ii) any application for a bankruptcy order filed pursuant to the BIA in respect of the Applicants or any bankruptcy order made pursuant to any such application or any assignment in bankruptcy made or deemed to be made in respect of the Applicants; or (iii) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt, or the creation of Encumbrances, contained in any agreement, lease, sub-lease, offer to lease or other arrangement which binds the Applicants (a "**Third Party Agreement**"), and notwithstanding any provision to the contrary in any Third Party Agreement:

(a)  the creation of any of the CCAA Charges shall not create or be deemed to constitute a breach by the Applicants of any Third Party Agreement to which it is a party; and

(b)  any of the beneficiaries of the CCAA Charges shall not have liability to any Person whatsoever as a result of any breach of any Third Party Agreement caused by or resulting from the creation of the CCAA Charges.

[53]  **DECLARES** that notwithstanding: (i) these proceedings and any declaration of insolvency made herein, (ii) any application for a bankruptcy order filed pursuant to the BIA in respect of the Applicants and any bankruptcy order allowing such application or any assignment in bankruptcy made or deemed to be made in respect of the Applicants, and (iii) the provisions of any federal or provincial statute, the payments or disposition of Property made by the Applicants pursuant to the Order and the granting of the CCAA Charges, do not and will not constitute settlements, fraudulent preferences, fraudulent conveyances, transfers at undervalue or other challengeable or reviewable transactions or conduct meriting an oppression remedy under any applicable law.

[54]  **DECLARES** that the CCAA Charges shall be valid and enforceable as against all Property of the Applicants and against all Persons, including, without limitation, any trustee in bankruptcy, receiver, receiver and manager or interim receiver of the Applicants, for all purposes.

**Hearing scheduling and details**

[55]    **ORDERS** that, subject to further Order of this Court, all applications in the CCAA Proceedings are to be brought on not less than five (5) days' notice to all Persons on the service list. Each application shall specify a date (the "**Initial Hearing Date**") and time (the "**Initial Hearing Time**") for the hearing.

[56]    **ORDERS** that any Person wishing to object to the relief sought on an application in the CCAA Proceedings must serve a detailed written contestation stating the objection to the application and the grounds for such objection (a "**Contestation**") in writing to the moving party, the Debtors and the Monitor, with a copy to all Persons on the service list, no later than 5 p.m. Montréal Time on the date that is three (3) days prior to the Initial Hearing Date (the "**Objection Deadline**").

[57]    **ORDERS** that, if no Contestation is served by the Objection Deadline, the Judge having carriage of the application (the "**Presiding Judge**") may determine: (a) whether a hearing is necessary or whether application can be determined on the basis of the record; (b) whether, if a hearing is necessary, such hearing will be in person, by video conference or by written submissions only; and (c) the parties from whom submissions are required (collectively, the "**Hearing Details**"). In the absence of any such determination, a hearing will be held in the ordinary course.

[58]    **ORDERS** that, if no Contestation is served by the Objection Deadline, the Debtors shall communicate with the Presiding Judge regarding whether a determination has been made by the Presiding Judge concerning the Hearing Details. The Debtors shall thereafter advise the service list of the Hearing Details and the Debtors shall report upon its dissemination of the Hearing Details to the Court in a timely manner.

[59]    **ORDERS** that, if a Contestation is served by the Objection Deadline, the interested parties shall appear before the Presiding Judge on the Initial Hearing Date at the Initial Hearing Time, or such earlier or later time as may be directed by the Court, to, as the Court may direct: (a) proceed with the hearing on the Initial Hearing Date and at the Initial Hearing Time; or (b) establish a schedule for the delivery of materials and the hearing of the contested application and such other matters, including interim relief, as the Court may direct.

**General**

[60]    **ORDERS** that no Person shall commence, proceed with or enforce any Proceedings against any of the Directors, employees, legal counsel, or financial advisers of the Applicants or of the Monitor in relation to the Business or Property of the Applicants, without first obtaining leave of this Court, upon ten (10) days'

written notice to the Applicants and the Monitor, and to all those referred to in this paragraph whom it is proposed be named in such Proceedings.

[61]   **DECLARES** that the Order and any proceeding or affidavit leading to the Order, shall not, in and of themselves, constitute a default or failure to comply by the Applicants under any statute, regulation, licence, permit, contract, permission, covenant, agreement, undertaking or other written document or requirement.

[62]   **DECLARES** that, except as otherwise specified herein, the Applicants and the Monitor are at liberty to serve any notice, proof of claim form, proxy, circular or other document in connection with these proceedings by forwarding copies by prepaid ordinary mail, courier, personal delivery, or electronic transmission to Persons or other appropriate parties at their respective given addresses as last shown on the records of the Applicants and that any such service shall be deemed to be received on the date of delivery if by personal delivery or electronic transmission, on the following business day if delivered by courier, or three business days after mailing if by ordinary mail.

[63]   **DECLARES** that the Applicants and any party to these proceedings may serve any court materials in these proceedings on all represented parties electronically, by emailing a PDF or other electronic copy of such materials to counsels' email addresses.

[64]   **DECLARES** that, unless otherwise provided herein, under the CCAA, or ordered by this Court, no document, order or other material need be served on any Person in respect of these proceedings unless such Person has served a Notice of Appearance on the solicitors for the Applicants and the Monitor and has filed such notice with this Court, or appears on the service list prepared by the Monitor or its attorneys, save and except when an order is sought against a Person not previously involved in these proceedings.

[65]   **DECLARES** that the Applicants or the Monitor may, from time to time, apply to this Court for directions concerning the exercise of their respective powers, duties and rights hereunder or in respect of the proper execution of the Order on notice only to each other.

[66]   **DECLARES** that the Order and all other orders in these proceedings shall have full force and effect in all provinces and territories in Canada;

[67]   **AUTHORIZES** the Monitor or the Applicants to apply as they may consider necessary or desirable, with or without notice, to any other court or administrative body, whether in Canada, the United States of America, or elsewhere, for orders which aid and complement this Order and any subsequent orders of this Court and, without limitation to the foregoing, any orders under Chapter 15 of the U.S. Bankruptcy Code including an order for recognition of these CCAA proceedings as "Foreign Main Proceedings" in the United States of America pursuant to Chapter 15 of the U.S. Bankruptcy Code, for which the Monitor, shall be the

foreign representative of the Applicants. All courts and administrative bodies of all such jurisdictions are hereby respectively requested to make such orders and to provide such assistance to the Applicants and the Monitor as may be deemed necessary or appropriate for that purpose.

[68]   **REQUESTS** the aid and recognition of any Court, tribunal, regulatory or administrative body in any Province of Canada and any Canadian federal court or in the United States of America, including without limitation the United States Bankruptcy Court for the District of Delaware, and any court or administrative body elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All Courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and the Monitor as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor or the authorized representative of the Applicants in any foreign proceeding, to assist the Applicants, and the Monitor, and to act in aid of and to be complementary to this Court in carrying out the terms of this Order.

[69]   **DECLARES** that, for the purposes of any applications authorized by paragraphs [67] and [68] of this Order, the Applicants' centre of main interest is located in Montréal, Québec, Canada.

[70]   **ORDERS** that Exhibits P-21, P-24 and P-25, and the Appendices A, B and D of Exhibit P-14 be kept under seal until further order from this Court.

[71]   **ORDERS** the provisional execution of the Order notwithstanding any appeal.

[72]   **FIXES** the hearing date on the extension of this Amended and Restated Order on June 28, 2024 at 9:30 am at a place to be determined by the Court.

Martin Sheehan

Signature numérique de Martin Sheehan
Date : 2024.04.11 13:16:13 -04'00'

MARTIN F SHEEHAN, J.S.C.