## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Case No. 24-10438 (LSS) |
| | ) | |
| GOLI NUTRITION INC., *et al.*, | ) | Chapter 15 |
| | ) | |
| Debtors in a Foreign Proceeding. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Dkt Nos. 2, 7, 8 & 88** |
| | ) | |

### BENCH RULING[1]

Before the Court are two motions in the chapter 15 cases of Goli Nutrition Inc., a

Canadian Corporation ("Goli Canada"), and Goli Nutrition Inc., a Delaware, corporation

("Goli US").  The motions were brought by the Foreign Representative, Deloitte

Restructuring Inc., appointed in the Canadian Proceedings[2] of these same entities.   The first

motion is the Foreign Representative's motion for recognition of the Canadian Proceedings

and request for related relief.[3]  The second motion is the Foreign Representative's motion

for recognition and enforcement of the RVO and Atos Sale Order entered in Canada and

approval of each of those transactions, denominated "sale transactions," free and clear of

liens, claims and encumbrances.[4]

---

[1] This Bench Ruling was read in court on April 18, 2024.  Minimal, minor, non-substantive corrections were made and citations were added.

[2] All capitalized terms not defined herein shall have the meaning given in the Pet'r's Motion for Entry of an Order (I) Recognizing and Enforcing the RVO and the Atos Sale Order, (II) Approving the Sale Transactions Free and Clear of Liens, Claims, and Encumbrances, and (III) Granting Related Relief, ECF Nos. 7 (Sealed), 8 (Redacted).

[3] Pet'r's Verified Pet. Under Chapter 15 for Recognition of the Canadian Proceedings and Req. for Related Relief, ECF No. 2.

[4] Pet'r's Motion for Entry of an Order (I) Recognizing and Enforcing the RVO and the Atos Sale Order, (II) Approving the Sale Transactions Free and Clear of Liens, Claims, and Encumbrances, and (III) Granting Related Relief, ECF Nos. 7 (Sealed), 8 (Redacted).

An evidentiary hearing was held on April 15, 2024.  Of the several objections that were filed or informally made, only one proceeded – the objection of the Hoffman Parties.[5] The rest were resolved.  For completeness, I will repeat my rulings on the record with respect to recognition of the Canadian Proceedings and enforcement of the RVO (with certain exceptions).[6]  I will also now rule on the request to enforce the Atos Sale Order and for approval of the Agency Agreement and the liquidation of the Atos Equipment.  For purposes of this Bench Ruling, when I use the term Atos Equipment, it means all the Equipment in the Norco Facility in California regardless of its genesis.

**<u>Recognition Motion</u>**

The recognition motion seeks recognition of the CCAA Proceedings for the two Goli entities as foreign main proceedings.  The Hoffman Parties objected to recognition to the extent that their litigation pending in the United States against current officers and directors of Debtors and certain non-Debtor affiliates would be stayed.  That objection was resolved by representations before the Canadian Court that the Hoffman litigation was not to be stayed.  This should be documented appropriately.  Accordingly, the recognition motion was unopposed.

---

[5] Obj. to (A) Pet'r's Verified Pet. Under Chapter 15 for Recognition of the Canadian Proceedings and Req. for Related Relief and (B) Pet'rs' Mot. for Entry of an Order (I) Recognizing and Enforcing the RVO and Atos Sale Order, (II) Approving the Sale Transactions Free and Clear of Liens, Claims, and Encumbrances, and (III) Granting Related Relief, ECF No. 55; Suppl. Obj. to (A) Pet'r's Verified Pet. Under Chapter 15 for Recognition of the Canadian Proceedings and Req. for Related Relief and (B) Pet'rs' Mot. for Entry of an Order (I) Recognizing and Enforcing the RVO and Atos Sale Order, (II) Approving the Sale Transactions Free and Clear of Liens, Claims, and Encumbrances, and (III) Granting Related Relief, ECF No. 68.

[6] 04/15/2024 Hr'g Tr. 137:10-139:6, ECF No. 84.

2

CCAA proceedings are consistently recognized by courts in the United States and there is no reason not do so in this case.  The request here is for recognition of the CCAA Proceedings for both debtors as foreign main proceedings.  Again, no one challenged this categorization.  I do note that one of these debtors is a Delaware corporation.  But, as there was no objection and I do not perceive a difference in how I would rule on the motions before me if recognition were as a foreign non-main proceeding, I will grant this request.

## Motion to Enforce the RVO and Atos Sale Order and Approving the Sale Transactions

As confirmed by counsel at the hearing, this motion actually embodies two separate requests and two separate transactions.  They were addressed separately at the hearing.

### A. Subscription Agreement/Reverse Vesting Order

The first transaction is Goli Canada's entry into the Subscription Agreement with the Purchaser (which consists of three entities, one of which is a former founder of Goli Canada).  The Subscription Agreement contemplates what is called a reverse vesting order transaction.  As described, this transaction contemplates that (i) Goli Canada will authorize and issue new shares of its own stock, which Purchaser will purchase, (ii) Goli Canada will redeem, terminate and cancel all current outstanding shares of its stock, (iii) a new Canadian entity will be created named Residual Co., (iv) Excluded Assets, Excluded Contracts and Excluded Liabilities will be vested out of Goli Canada into Residual Co, (v) Residual Co will be added as a debtor in the CCAA Proceedings; (vi) Goli Canada shall exit from the Canadian Proceedings; and (vii) certain releases will be provided.  As described by the Foreign Representative, this transaction gives the Purchaser "the benefits of equity ownership . . . while at the same time providing the purchaser with the benefits of a 'free

and clear' asset sale by 'vesting out' certain unwanted liabilities, claims and unwanted assets."[7]

Deloitte touts this as a "'innovative' solution" to be used where appropriate and "a valuable tool in Canadian insolvency proceedings."[8] For example, this structure permits the preservation of permits, licenses and tax attributes that might be difficult to transfer or lost in other structures. Through one of Mr. Zucker's declarations various decisions of the Canadian courts approving reverse vesting orders were submitted to the court. Our own research revealed several instances in which a Canadian court did not approve such transactions, including as referenced in a February 29, 2024 Practical Note penned by certain Norton Rose attorneys.[9]

Here, the CCAA Court, through Judge Martin Sheehan, approved the Subscription Agreement and the Reverse Vesting Order in a document titled Amended and Restated Initial Order and Other Relief, Including the Approval of a Transaction and an Agency Agreement. This includes his reasoning for approval and I will call it the Canadian Opinion.[10]

At the hearing, I stated that I would enforce the order as there were no objections to the transaction as a whole or its structure. Notice was provided to all parties, including

---

[7] Pet'r's Suppl. In Supp. of Mot. for Entry of an Order (I) Recognizing and Enforcing the RVO and the Atos Sale Order, (II) Approving the Sale Transaction Free and Clear of Liens, Claims, and Encumbrances, and (III) Granting Related Relief ¶ 1, ECF No. 53.

[8] *Id.* at ¶ 2.

[9] Evan Cobb et al., *Reverse Vesting Orders*, https://1.next.westlaw.com/Document/I1071e159396911ebbea4f0dc9fb69570/View/FullText.html?transitionType=Default&contextData=(sc.Default) (updated Feb. 29, 2024).

[10] ECF No. 67-1.

shareholders whose stock is being redeemed and cancelled for no consideration and those

who may hold liabilities that are being vested out to Residual Co.  I must emphasize,

however, that I do not know how I would rule on a similar reverse vesting transaction if

there were objections.  So, I cannot stress enough that the order I enter should not be cited

in future motions for the proposition that U.S. courts have unconditionally approved such

transactions.

What I will not do, however, is approve the entire transaction, independently, under

section 363 of the Bankruptcy Code.  The proposed order with the motion does just that.  It

has almost eight pages of findings of fact related to the Subscription Agreement and the

"free and clear" nature of the "sale" of the stock.  The Order seeks all the bells and whistles

of a 363 sale order in a chapter 11 case.  First, the issuance of stock in a debtor company is

not a sale transaction under section 363.  Goli Canada is not selling an asset, it is issuing

stock.  Second, even if it were, the new stock, which is stock in a Canadian company is not

the "transfer of an interest of the debtor in property that is within the territorial jurisdiction

of the United States."[11]  Thus, section 1520(a)(2), which automatically applies section 363

upon recognition of a foreign main proceeding, does not apply.  As noted in Colliers, a

chapter 15 proceeding is ancillary to a foreign proceeding and "should not invoke the

universal jurisdiction over property of an estate created in a case filed under section 301, 302

or 303.  For property outside the United States to be affected, the foreign representative

would be required to commence a case under another chapter of title 11."[12]  Accordingly, I

---

[11]  11 U.S.C. § 1520(a)(2).

[12]  8 Collier on Bankruptcy ¶ 1520.01 (16th ed. 2024) (citing H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 114-15 (2005).

will not separately approve the entire Subscription Agreement and reverse vesting transaction under section 363 of the Code as requested.

But, there is one piece of the reverse vesting transaction that may require my approval. At the hearing, the Hoffman Parties objected to the enforcement of the RVO solely to the extent that the Atos Equipment was being transferred from Goli Canada to Residual Co. Arguably, this requires my approval under section 363. I say arguably because this is not a sale of the Atos Equipment, but it might be a use and it is certainly out of the ordinary course. To the extent necessary, I will approve this transfer. The transfer of the Atos Equipment from Goli Canada to Residual Co. in no way impacts the ownership dispute. As discussed at the hearing, the Atos Equipment transfer will not be free and clear of liabilities and will be subject to claims, including the ownership dispute with the Hoffman Parties. The Hoffman Parties' concern that the transfer will result in the loss of an ability to raise their dispute at the April 30 hearing should not be a concern as Residual Co. will be substituted in as a CCAA debtor. In essence, this transfer from Goli Canada to Residual Co. effects a quit claim deed, which I will discuss further in my ruling on the Liquidation Order.

The last thing to address is the request for the substitution of Residual Co. for Goli Canada in the chapter 15 case. While Judge Sheehan is permitting Residual Co. to be substituted for Goli Canada in the CCAA proceedings, there is no such concept in the Bankruptcy Code. Residual Co. is a different entity with different assets. The Foreign Representative's counsel stated at the hearing that it will file a new chapter 15 case for Residual Co. and seek to dismiss Goli Canada's case. I instructed counsel to consult with

the Office of the United States Trustee on the best way for the Goli Canada case to be
concluded.

**B. Atos Equipment/Liquidation Order**

The second transaction contained in the motion and approved by Judge Sheehan is
the sale of the Atos Equipment.  The Atos Equipment is not necessary for the go forward
business and the Purchaser is not taking it in the RVO transaction.  Rather, the Atos
Equipment is, collectively, an Excluded Asset under the RVO, and will be vested out to
Residual Co.

After the failed marketing process for the Atos Equipment, Goli Canada entered into
an Agency Agreement with a Gordon Brothers entity pursuant to which Gordon Brothers
will liquidate the equipment per a marketing and auction process.  It is undisputed that the
Atos Equipment is located in California.  What is disputed is ownership of that equipment.

The Hoffman Parties assert that they and certain related entities or entities in which
they are majority stockholders own certain pieces of the Atos Equipment.  They originally
did not object to the sale of the Atos Equipment by Gordon Brothers provided that this
court retained jurisdiction to determine the allocation of proceeds based on ownership of the
Atos Equipment and that the proceeds be kept in an account in the United States.  In a
Supplemental Objection filed the day before the hearing, however, the Hoffman Parties
pivoted their position and fully objected to the sale until the ownership issue was decided.[13]
Citing my previous decision in *Crystallex*,[14] as well as former Judge Sontchi's *Elpida*

---

[13]  Suppl. Obj. to (A) Pet'r's Verified Pet. Under Chapter 15 for Recognition of the Canadian
Proceedings and Req. for Related Relief and (B) Pet'rs' Mot. for Entry of an Order (I) Recognizing
and Enforcing the RVO and Atos Sale Order, (II) Approving the Sale Transactions Free and Clear
of Liens, Claims, and Encumbrances, and (III) Granting Related Relief, ECF No. 68.

[14]  *In re: Crystallex Int'l Corp.*, 2022 WL 17254660 (Bankr. D. Del. Nov. 28, 2022).

decision,[15] the Hoffman Parties argue that the bankruptcy court has *in rem* jurisdiction over a debtor's assets located in the United States and charges this court (not the court presiding over CCAA proceedings) with the responsibility to approve the transfer of those assets. They further argue that if ownership of assets is disputed, this court must decide the ownership issue before it can approve a sale. Though the Supplemental Objection was filed only the day before the hearing, I permitted it to be heard. These proceedings are moving quickly and due process and fairness requires that the objection be heard as it goes to a fundamental issue—ownership of property.

Because of the late filing, however, the Foreign Representative did not have a chance to put in a written reply nor did I have the opportunity to consider all issues surrounding the objection prior to the hearing.

At the hearing, the Foreign Representative's response came in multiple parts. First, it argued that the matter was already in front of Judge Sheehan in the CCAA Proceedings. Indeed, the Canadian Opinion reflects that the Hoffman Parties filed an opposition to the sale of the Atos Equipment on April 8 and that the hearing on the matter was postponed until April 11 "to allow all parties to understand each other's position and propose a viable solution."[16] No resolution was reached. Judge Sheehan states that the Hoffman Parties asked that the disputed property "be segregated or the liquidation sale be deferred until their property rights have been adjudicated," but the Hoffman Parties "have so far filed no proceedings to have their rights recognized nor have they filed evidence supporting any

---

[15] *In re Elpida Memory, Inc.*, 2012 WL 6090194 (Bankr. D. Del. Nov. 20, 2012).

[16] Canadian Opinion ¶ 40.

prejudice they could suffer in the liquidation proceeds."[17]  The Canadian Court then fashioned a remedy, which permits the Monitor to set aside $1 million from the sale of the Atos Equipment less expenses related to the Atos Equipment that have to date been picked up by Goli Canada.[18]  Judge Sheehan also set a hearing date of April 30 to determine the Hoffman Parties' claims to the sale proceeds, Deloitte's claim for retroactive contribution to expenses related to the Atos Equipment such as rent, as well as any claim Deloitte may choose to present for "abuse of process."[19]

Second, the Foreign Representative contends that comity requires me to defer to the Canadian Court on all matters related to the auction of the Atos Equipment.

Third, either the Foreign Representative's or the Lenders' counsel argued that the ownership decision need not be made before section 363 can be applied and that courts all the time reserve sale proceeds in the event of a dispute over ownership.

Fourth, the Foreign Representative argued that section 541 was not specially enumerated in the sections of the Code that are applied in chapter 15 cases so this concept is not imported into chapter 15 and, again, I must defer to the Canadian Court on the ownership issue.

**Ruling**

While I gave some preliminary thoughts on this motion, I stated at the conclusion of the hearing that because the matter had not been briefed, I would need to read some cases

---

[17] *Id.* at ¶ 43.

[18] *Id.* at ¶ 52.

[19] *Id.* at ¶¶ 56, 89.

before I could rule.  I have done so.  Would time and my schedule have permitted (and the schedule of the case Debtors are insisting upon permitted) I would have read more.  As I stated at the hearing, I find chapter 15 cases challenging and this case did not disappoint on that score.  Accordingly, I am making the best decision I can in the time allotted.

First, the Foreign Representative is seeking relief under many sections of the Code, but the most applicable section is 1520(a) and particularly subsection (2) which provides that "Upon recognition of a foreign proceeding that is a foreign main proceeding – sections 363, 549 and 552 apply to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the section would apply to property of an estate."[20]  Subsection (1) and (3) address sections of the Code that apply to "property of the debtor" within the territorial jurisdiction of the United States.[21]

I previously held in *Crystallex* that section 1520 establishes that the court presiding over the chapter 15 case has *in rem* jurisdiction over a debtor's assets in the United States and that the bankruptcy court—not the court presiding over the foreign main proceeding—is charged with approving transfers of those assets.  In so ruling, I relied on the *Elpida* decision which contains a fulsome discussion of section 1520(a)(2) and section 363, including a plain meaning discussion, a legislative intent discussion and a discussion of comity.  Former Judge Sontchi concludes by ruling that "the Model Law [on which chapter 15 is based] follows an in rem division of labor between competing sovereignties – tasking the domestic courts with responsibility over assets in their jurisdiction."[22]

---

[20]  11 U.S.C. § 1520(a)(2).

[21]  11 U.S.C. § 1520(a)(1), (a)(3).

[22]  *Elpida*, 2012 WL 6090194, at *7

I also relied in *Crystallex* on the Second Circuit's decision in *Fairfield Sentry*.[23]  In that case, the bankruptcy court deferred to a British Virgin Islands (BVI) court presiding over a foreign proceeding in connection with the sale of the debtor's claim in the Madoff-related SIPA proceedings in the bankruptcy court in the Southern District of New York.  The BVI court approved the sale, but also directed the foreign representative to seek approval or disapproval of the sale in the bankruptcy court.  On ultimate appeal to the Second Circuit, the court determined that the situs of the SIPA claim was in the United States and that under section 1520(a)(2), the bankruptcy court must apply section 363 to the sale.  It could not defer.  After doing its statutory analysis, the Circuit then turned to comity because the bankruptcy court also deferred to the BVI court on that basis.  The Second Circuit held that chapter 15 imposes certain requirements that "act as a brake or limitation on comity" and that the plain language of section 1520(a)(2) was one such break.[24]  On remand, applying the 363 standard, the court did not approve the sale.[25]

These cases, though not Third Circuit authorities, so not binding, require me to apply the 363 standard to the transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States.  And I am persuaded by these cases.  I also note that the Foreign Representative specifically seeks relief under section 363 and wants all the findings and bells and whistles that go with a sale conducted under chapter 11.  Comity does not require me to defer to the Canadian Court on approval.  In fact, the cases I have cited say I cannot.

---

[23] *In re Fairfield Sentry Ltd.*, 768 F.3d 239 (2d Cir. 2014).

[24] *Id.* at 245.

[25] *In re Fairfield Sentry Ltd.*, 539 B.R. 658 (Bankr. S.D.N.Y. 2015).

The standard for section 363 in this jurisdiction is well-settled.  A sale outside of the ordinary course of business can be approved if: (i) a sound business purpose exists, (ii) the sale price is fair, (iii) adequate notice has been provided and (iv) the purchaser has acted in good faith.  The Hoffman Parties do not challenge any of these factors.  And, based on the evidence admitted at the hearing, I can easily conclude that each of these factors have been met.  The Agency Agreement is the result of good faith negotiations and was the best offer received from liquidation firms vying for the opportunity to sell the assets.  Further, the prepetition marketing and sale process (the SISP) did not result in any offers for the Atos Equipment.

I am left therefore with two questions.  Does the ownership dispute have to be decided before I can approve the sale under section 363?  And, if so, who must decide this dispute?

As I said before, at the hearing, it was argued that the ownership dispute does not need to be decided, that the disputed Atos Equipment can be sold and that the Hoffman Parties can be relegated to the receipt of proceeds.  While I have never written on this issue, I do not agree.  While there may be cases to the contrary, I see nothing in section 363 of the Code that permits me to authorize the sale of property that is not property of the estate—in other words that the debtor has no interest in at all.  Further, I see nothing in section 363 that permits me to relegate the non-debtor owner of property to proceeds of a sale process.

The Hoffman Parties cite a recent case out of the bankruptcy court in Massachusetts, *Worcester Country Club Acres*, which summarizes and discusses the issue clearly.[26]  Section

---

[26] *In re: Worcester Country Club Acres, LLC*, 655 B.R. 41 (Bankr. D. Mass. 2023).

363(b)(1) states that the after notice and a hearing the trustee may use, sell or lease *property of the estate* outside the ordinary course of business.[27]  While property of the estate does include interests in property that the debtor may not currently have in its possession—such as property recovered under avoidance actions, and property which the debtor jointly owns with others in certain delineated circumstances (such as community property)—it does not include property in which the debtor has absolutely no interest.[28]

Further, courts that rely on 363(f)(4) in order to approve a sale of property in which ownership is disputed are mistaken.  Section 363(f) does not provide independent authority for a trustee to sell assets.  Rather, section 363(f) provides for a free and clear sale of property that can be sold by the Trustee under subsection (b) or (c).  So, in order to invoke the "free and clear" sale, the trustee must first own the property.  Disputes envisioned by section 363(f)(4), therefore, are not ownership disputes.[29]  For a similar proposition, I would point to the Third Circuit's decision in *Integrated Solutions, Inc. v. Service Support Specialties, Inc.*,  in which the court ruled that a debtor could not sell property in violation of state law, and that section 363 is simply an enabling statute that does not expand or change a debtor's interest in property because it filed bankruptcy.[30]

Thus, with one exception, I conclude that the ownership issue must be decided before I can authorize property to be sold.  The one exception, as pointed out in the *Worcester Country Club* decision, is if the Debtor is selling its disputed interest in the

---

[27]  11 U.S.C. 363(b)(1) (emphasis added).

[28]  *Worcester Country Club*, 655 B.R. at 46.

[29]  *See id.*

[30]  *Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487 (3d Cir. 1997).

property.[31]  If a purchaser is willing to buy whatever interest the debtor has in the property—in essence, take a quitclaim deed—that could be permissible.  The dispute would survive the sale, to be fought now by the purchaser, not the debtor.  That is what I am approving with the transfer of the Atos Equipment from Goli Canada to Residual Co.  I could enter such an order on the Liquidation Order, but that is not what the Foreign Representative wants.  And, that is not what Gordon Brothers wants.

Having ruled that the ownership issue must be decided before I can enter a non-conditional sale order, the question is who must decide this dispute.  Once again, I have no briefing on the issue.

At argument, the Hoffman Parties insisted that I have to make the decision.  If this were a case under chapter 11, I would conclude that while the decision has to be made, the Canadian Court is in the best position to determine the ownership issue.  It has already conducted a hearing on this matter and has a hearing scheduled for April 30.  That hearing is on the Hoffman Parties' claim to the proceeds of the sale of the Atos Equipment as well as whether the Hoffman Parties should contribute to any of the expenses attendant to the equipment.  In order to make those determinations, the Canadian Court must decide the ownership issue.  Permitting the Canadian Court to make the ownership decision in that context is consistent with the *Worcester Country Club* decision in which the court ruled that the ownership dispute would proceed in the Massachusetts Land Court, which was presiding over the ownership dispute prepetition.[32]  Indeed, had the ownership issue been determined by the Canadian Court prior to the chapter 15 case being filed, or maybe even

---

[31] *Worcester Country Club*, 655 B.R. at 46.

[32] *Id.* at 47 n.8.

prior to the motion being filed, my instinct is that there would be no reason to revisit the decision.

But the question is: does the fact that this is a chapter 15 case change that result? The cases I have reviewed provide no definitive guidance. *In re Koreag, Controle*, is a Second Circuit decision from 1991, and is interpreting section 304, not chapter 15.[33] The facts are these: Upon the filing of its petition under section 304, the foreign representative appointed in a Swiss insolvency proceeding sought turnover of funds held in a bank account in the United States. Section 304(b)(2) provided that the court may "order turnover of property of such estate" and sets forth factors to guide the court in granting that relief.[34] The ownership of the funds in the account was disputed. Similar to the section 363 issue I have just discussed, one question presented to the court was whether the ownership issue had to be decided before the court could order turnover to the foreign representative. The district court presiding over the matter said no. The Circuit Court reversed.

The Circuit held that the use of the words "'property of such estate' presupposes an antecedent determination of property interests as a condition to turnover of property to a foreign representative."[35] In so concluding, the court analogized it to section 541 of the Bankruptcy Code and notes that while federal bankruptcy law determines property of the estate, "state law determines the nature of a debtor's interest in a given item."[36] The court

---

[33] *In re: Koreag, Controle et Revision S.A. v. Refco F/X Assocs., Inc.*, 961 F.2d 341 (2d Cir. 1992).

[34] *Koreag*, 961 F.2d at 346 n.4 (citing 11 U.S.C. 304 (repealed)).

[35] *Id.* at 348.

[36] *Id.* at 349 (quoting *Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1101 (2d Cir. 1990) (internal quotation omitted)).

then suggests that this same concept should apply in section 304 cases.  By analogy, then, before property may be turned over to a foreign representative, a bankruptcy court should apply local law to determine whether the debtor has a valid ownership interest in that property.  As the court puts it, "property interests have an independent legal source, antecedent to the distributive rules of bankruptcy administration."[37]

The foreign representative next contended that if local law was to be applied, the foreign court presiding over the Swiss proceeding should apply that law.  The Second Circuit appears to disagree.  It concludes that because the foreign representative was asking a United States court for relief—i.e. turnover—that the bankruptcy court whose authority is invoked must determine the legitimacy of that invocation.  The power of the court to order turnover extended only to "property of the estate" which the court said demanded that the U.S. court determine the ownership issue first.  If the debtor did not own the funds in the account, it could not be property of the estate.  *Koreag*'s holding is confirmed in *Altos Hornos de Mexico*, another Second Circuit decision issued in 2005 and another section 304 turnover case.[38]  The conclusion of that court is that "[p]roperty ownership questions thus precede distribution and, for the reasons stated in *Koreag*, are best resolved under local law."[39]  But, the court then concludes: "we thus reaffirm *Koreag*'s rule that U.S. courts *may* resolve *bona fide* questions of property ownership arising under local law while a foreign bankruptcy

---

[37]  *Id.*

[38]  *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. DE C.V.*, 412 F.3d 418 (2d Cir. 2005) (emphasis added).

[39]  *Id.* at 426.

proceeding is ongoing without deferring to the parallel foreign proceeding on grounds of international comity."[40]

Both the *Koreag* Court and the *Altos Hornos* Court alternate between permissive and mandatory language. Thus, while the courts are clear that the ownership decision must be made before the property is turned over, no clear guidance is given on which court must decide the ownership issue. One more case cements this lack of clarity for me. In *Cozumel Caribe, S.A. de C.V.*, applying chapter 15, the court discusses both *Altos Hornos* and *Koreag* and states that those cases "allow" a U.S. court to determine the ownership of property within the United States that is subject to a bona fide ownership dispute arising under U.S. Law.[41] *Cozumel Caribe* also concerned the ownership of funds in a bank account. The court ruled on the very specific factual circumstances of that case, to permit the dispute to be resolved by the Mexican court if it did so in a timely fashion. In that case, the issue did include whether a previous order of the Mexican court covered all funds in the account. But the Mexican court was also permitted to determine the amount of funds not covered by the previous order—that is, not owned by the Debtor.[42]

I conclude, therefore, based on the limited research time permitted that this Court can decide the ownership dispute, but need not do so in an appropriate circumstance. I also conclude that this is such a circumstance. Judge Sheehan has already held one hearing related to this ownership dispute and currently has a second hearing teed up for April 30. As I understand it, in order to determine whether the Hoffman Parties are entitled to any

---

[40] *Id.* (emphasis added).

[41] *CT Inv. Mgmt. Co., LLC v. Cozumel Caribe, S.A. de C.V. (In re Cozumel Caribe, S.A. de C.V.)*, 482 B.R. 96 (Bankr. S.D.N.Y. 2012).

[42] *Id.* at 117.

proceeds of a liquidation sale and whether they must contribute to equipment expenses, the court must determine ownership of the Atos Equipment by applying applicable law.  And I will note that what law is applicable has not been the subject of discussion before me.  If the Canadian Court makes those decisions on April 30, I see no reason to preside over parallel proceedings.  Of course, my decision does not compel the Canadian Court to hold a hearing, make a determination on ownership or provide a timeframe in which any decision should be made.

What I will do is hold the liquidation motion in abeyance until the ownership decision is made.  The parties should report back on the status after the April 30 hearing.